[No. B203935. Second Dist., Div. Four. Jan. 20, 2009.]

THE PEOPLE, Plaintiff and Respondent, v.
TIMOTHY ALBERT GRAFF, Defendant and Appellant.

Counsel

Law Offices of Mark J. Werksman, Mark J. Werksman and Kelly C. Quinn for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Scott A. Taryle and Allison H. Chung, Deputy Attorneys General, for Plaintiff and Respondent.

Opinion

MANELLA, J.—Appellant Timothy Albert Graff contends his convictions on two counts of violation of Penal Code section 288, subdivision (c)(1) must be reversed because the jury was permitted to convict based on charges not established at the preliminary hearing.[1] We agree and reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Complaint*

In November 2006, a seven-count criminal complaint was filed against appellant. All seven counts alleged that appellant committed a lewd and lascivious act on a person who was 15 years old with the intent of "arousing, appealing to and gratifying" his "lust, passions, and sexual desires" within the meaning of section 288, subdivision (c)(1).[2] None alleged a specific act.

Counts 2 through 7 identified the minor involved as "Victim 1."[3] Count 2 alleged that the improper act occurred between November 17 and December 31, 2003. Count 3 alleged that the act occurred between January 1 and February 28, 2004. Count 4 alleged that the act occurred between March 1

---

[1] Unless otherwise specified, statutory references are to the Penal Code.

[2] Section 288, subdivision (c)(1) provides: "Any person who commits an act described in subdivision (a) with the intent described in that subdivision, and the victim is a child of 14 or 15 years, and that person is at least 10 years older than the child, is guilty of a public offense . . . ." Subdivision (a) provides: "Any person who willfully and lewdly commits any lewd or lascivious act, including any of the acts constituting other crimes provided for in Part 1, upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child, is guilty of a felony . . . ."

[3] The remaining count, count 1, alleged that the minor involved was "Victim 2" and that the act occurred between May 1 and August 1, 2006. The jury ultimately acquitted appellant of this count. Consequently, we do not discuss it or the evidence pertaining to it unless pertinent to the issues on appeal.

and April 30, 2004. Count 5 alleged that the act occurred between May 1 and June 30, 2004. Count 6 alleged that the act occurred between July 1 and August 31, 2004. Count 7 alleged that the act occurred between September 1 and November 8, 2004.

### B. *Preliminary Hearing*

The preliminary hearing took place in April 2007. The two alleged victims and Officer Joanne Yarbrough were the only witnesses.[4]

Victim 1 was appellant's adoptive daughter. Her birth date was November 9, 1988. She testified that the first time appellant made an improper suggestion to her was sometime in the summer of 2004, between the end of her ninth grade school year and the beginning of her 10th grade year, before she turned 16.[5] She was alone in her bedroom. Appellant asked to see how she was developing. She showed appellant her breasts by lifting her shirt for a few seconds and he commented that she was "cute." The second incident occurred in the fall of 2004, after Victim 1 entered 10th grade, just before she turned 16. Appellant came into her bedroom and asked to "see" her. She showed him her breasts for a few seconds by lifting her shirt. On both occasions, appellant offered her money. A third incident occurred shortly thereafter. This time, Victim 1 removed all her clothing. On this occasion she expected not money, but a free pass to do anything she wanted, which she referred to as "a pretty please."[6]

The fourth incident occurred when Victim 1 was in 10th grade, while she was in her bedroom. Appellant asked her to masturbate, which they both referred to as "girly business." She touched her vaginal area over her clothing for approximately 15 seconds. The court asked if she could recall the date with more precision, but other than that it "probably" occurred before Christmas, she could not. On a fifth occasion, which also occurred during 10th grade, she masturbated with a pillow over her head. She testified that this incident also occurred before Christmas, probably in the fall; but again, she could not recall the date with more precision.

Although the complaint contained six counts pertaining to Victim 1, she described only the foregoing five incidents. At one point, the prosecutor prompted her about other possible incidents, asking whether there was a time

---

[4] Neither Victim 2 nor Officer Yarbrough provided testimony pertinent to Victim 1.

[5] Victim 1 turned 16—and fell out of the purview of section 288, subdivision (c)(1)—on November 9, 2004.

[6] Victim 1 was asked if she could estimate the number of times appellant asked to view her breasts or whole body. She responded: "Probably less than 15, less than 10. Probably less than that. I'm not sure. I don't know."

appellant pulled a towel off her when she had just finishing showering, whether appellant ever forcibly removed her clothing, or whether there was another masturbation incident in which she was more fully unclothed. In each case, she stated she could not recall any such incident.

After hearing the evidence, the court noted that Victim 1's testimony encompassed only five incidents, rather than the six set forth in the complaint, and that only the dates in counts 6 and 7 of the complaint corresponded to any of the dates stated in her testimony. Moreover, the court found Victim 1's testimony too vague concerning the dates of the two masturbation incidents to constitute substantial evidence that the incidents occurred before she turned 16.[7] Accordingly, the court (1) dismissed count 2; (2) amended the date of count 5 to allege the incident occurred between July 1 and November 1, 2004; (3) amended counts 3 and 4 to conform to the testimony concerning the dates of the two masturbation incidents and dismissed those counts. Counts 6 and 7 remained as originally alleged. The court expressly matched each remaining count with a specific incident from Victim 1's testimony: "I see count 6 as being the first display of [Victim 1's] breasts. Count 7 is the second display [of her breasts]. . . . I'm going to change the date [of count 5] to between July 1 of 2004 and November 1 of 2004. And that will be the count which corresponds to the testimony that [Victim 1] removed her clothes."

## C. *Information*

After the preliminary hearing, an information was filed conforming to the commissioner's rulings. It charged appellant with three counts of committing a lewd and lascivious act on the person of Victim 1 within the meaning of section 288, subdivision (c)(1), numbered 5, 6, and 7: count 5 alleged the incident occurred between July 1 and November 30, 2004; count 6 alleged the incident occurred between July 1 and August 31, 2004; and count 7 alleged the incident occurred between September 1 and November 8, 2004. All three counts alleged that the victim was 15 years old at the time of the offense.[8]

---

[7] With respect to counts 3 and 4—the counts designated as pertaining to the allegations of watching Victim 1 masturbate—the court stated: "I find that on those counts, there is enough ambiguity as to the dates to which those events occurred, that while I have no doubt that those two events took place more or less as the witness testified, she is so uncertain as to the dates, that I cannot determine whether or not she was 15 years old or 16 years old when they occurred. [¶] If she was 16 years old, the offenses as alleged would not apply. And since there is substantial ambiguity as to those two counts, I'm compelled to dismiss them."

[8] Notwithstanding this allegation, the undisputed evidence was that Victim 1 turned 16 on November 8, 2004; thus, she would have been 16 during a portion of the time covered in count 5.

### D. *Pretrial Proceedings; Evidence of Uncharged Offenses*

Prior to trial, defense counsel moved to exclude all evidence pertaining to appellant's having watched Victim 1 masturbate, on the ground that the prejudicial effect outweighed any probative value. In making this request, counsel stated: "The complaint in the matter charged in counts 3 and 4 that [appellant] observed [Victim 1] masturbating. [¶] At the preliminary hearing the commissioner found that there was insufficient evidence to sustain those counts. They were therefore dismissed. [¶] Those counts are no longer in the case. The issue of masturbation is no longer in this case, and it ought to be excluded on relevance grounds. [¶] But beyond that, it is excludable on [Evidence Code section] 352 grounds. The issue is, is it unduly prejudicial? Does it outweigh the probative value? And I submit it does given that the counts were dismissed. The probative value is nil and the potential prejudice is high."

In response, the prosecutor began by conceding that the People were not proceeding on counts 3 and 4: "Counts 3 and 4—2, 3 and 4 we are not proceeding on." She then argued that the commissioner's preliminary hearing rulings did not "restrict [the People] in terms of our ability to introduce evidence that relates to the charges"; that there was "nothing in the complaint or the information that says anything about what the nature of the touching is"; and that "any evidence that has been turned over to the defense in preparation for this trial . . . is admissible to establish whether the charges are true." She asserted that "[the evidence] turned over to the defense, is far more substantial than what was introduced at [the] preliminary hearing." She further argued that the People were permitted to introduce evidence "to establish the intent or the motive of the defendant . . . and even if there are . . . previously dismissed additional offenses, the People are clearly under . . . Evidence Code [section] 1108, permitted to introduce evidence of other sex related acts, whether they are charged, uncharged, dismissed, [etc.]"[9]

---

[9] Evidence Code section 1108, subdivision (a) provides: "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101 [limiting the admissibility of opinion and reputation evidence], if the evidence is not inadmissible pursuant to Section 352."

The court ruled that the evidence was admissible as indicative of motive or intent.[10]

### E. Trial

#### 1. Opening Statements

In her opening statement, the prosecutor contended the evidence would show that appellant "consistently and habitually committed lewd acts upon the person of [Victim 1]" and committed "at least three lewd and lascivious acts upon the person of [Victim 1]." She did not specify the acts charged, but stated the evidence would show that appellant moved from requesting to see parts of the victims' bodies to "teaching [Victim 1] to masturbate in his presence . . . on multiple occasions."

In his opening statement, defense counsel stated that with respect to Victim 1, appellant was charged in three counts with having viewed her breasts and body. Counsel informed the jury that appellant was not charged with "anything having to do with masturbation."

#### 2. Prosecution's Case

Appellant and his wife were the adoptive parents of both victims. Prior to their adoption, the two were in foster care. When Victim 1 was 13 or 14 years old, the family moved to a larger house, where she had her own bedroom. Appellant began a nightly ritual of stopping by her bedroom after she had changed for bed. On one or two occasions, he told her to remove the bra she was in the habit of wearing under her pajamas and stayed in the room while she did this.

In 2003, when Victim 1 was 14, appellant directly asked to see her breasts for the first time. Initially, she said no, but appellant eventually persuaded her to expose her breasts, which she did by lifting her shirt. This happened multiple times during the period Victim 1 was in ninth grade (when she was from 14 to 15 years old), approximately once or twice a month. When she did it, appellant often said "how cute." When she was reticent, appellant offered her money or privileges, such as permission to stay out late or go to a party.

In 2004, when Victim 1 was in the latter part of ninth grade or the beginning of 10th grade, appellant asked to see "all" of her when he was

---

[10] The court did not refer to any specific provision of the Evidence Code to support its ruling. Section 1101, subdivision (b) permits the admission of evidence that a person committed "a crime, civil wrong, or other act" if relevant to prove such matters as "motive, opportunity, [and] intent."

visiting her bedroom one night. At first, she said no, but she acquiesced when appellant offered her different privileges. She pulled her pants and underwear down below her knees while lying on her back and then turned over. This type of exposure happened approximately four times.[11]

Another incident occurred in late 2003, when Victim 1 had finished a shower and wrapped herself in a towel. Appellant asked if he could "see" her. She refused. Appellant asked if she was "hiding anything" and pulled the towel off without her permission. She was 15 at the time.

In the early part of 10th grade, before Victim 1's 16th birthday, appellant asked her to masturbate or simulate masturbation. Initially, she refused. Again, appellant offered her privileges. One of the privileges they called a "pretty please," which meant Victim 1 could ask permission to do something and appellant could not refuse. The first time the simulated masturbation occurred, Victim 1 put her hand on top of her clothing. She was 15 at the time. Appellant persuaded her to do it a second time with a pillow over her face and her pants pulled down. Victim 1 was unsure when the second masturbation incident occurred.

Just before she turned 18, Victim 1 confided in a number of people, including Victim 2, about her experiences with appellant. Victim 2 related a similar experience. Victim 1 said she was going to talk to the school counselor. Victim 2 tried to dissuade her because she feared returning to foster care. The two victims then spoke with Mrs. Graff, who expressed disbelief and went to speak with appellant privately. When she returned to speak with the victims, Mrs. Graff said she was sorry and seemed upset.

After speaking to her mother about what appellant had done, Victim 1 said she wanted to go live at a friend's house. She packed some clothes and began to leave. Before she left, she had a discussion with appellant and Mrs. Graff about what had happened and the privileges she had received from appellant. Appellant said he was sorry and did not mean to hurt her. Appellant and Mrs. Graff also tried to dissuade her from talking to the school counselor. Appellant offered to move out. Victim 1 rejected that offer and went to live first with a friend and then with her boyfriend. She talked to the school counselor a few weeks later. Afterwards, she also spoke with Officer Yarbrough and a social worker, Lisa Alford.

Alford, the social worker, testified that she was called in to investigate the family in October 2006. When interviewed, Victim 1 reported that appellant

---

[11] She testified that these incidents occurred "in that same time frame" as the breast exposure incidents but was not more specific.

gave her privileges for exposing her breasts and that she had done it multiple times after turning 14. Victim 1 also described the towel incident and said she had masturbated in front of appellant on three occasions. Mrs. Graff told Alford that she believed Victim 1, that appellant had admitted the accusations were true, and that she was going to ask appellant to leave their home. Appellant told Alford that he had asked to see both victims' breasts in exchange for money, and had watched Victim 1 masturbate three times, the last time in the summer of 2005.

Officer Yarbrough also testified that she was called in to investigate in October 2006. Mrs. Graff told the officer she had come to believe Victim 1 after talking to Victim 2 and after appellant admitted the allegations. Mrs. Graff also told the officer she believed appellant had the right to view the victims' bodies or watch them masturbate and it was not unhealthy. Mrs. Graff admitted she had discouraged the victims from talking to the authorities. Victim 1 told Officer Yarbrough that appellant offered her money and privileges for exposing her breasts, which she had done approximately five times, and that she had masturbated in front of him three times.

Mrs. Graff testified that she and appellant had had a discussion with Victim 1 about the accusations and that she did not believe Victim 1. She denied telling Officer Yarbrough or Alford that appellant had confessed to watching Victim 1 masturbate or asking both victims to reveal their breasts. She denied that appellant had ever acknowledged paying money or giving favors to the victims to view their bodies.

### 3. *Defense Case*

Appellant, testifying in his own behalf, admitted he had seen Victim 1's breasts or body on a total of three occasions. On the first occasion, she was in the ninth grade. Appellant noticed she had a hickey, a bruise and some red marks or scratches on her upper body and arms. He asked if he could take a closer look and she removed her top. On the second occasion, Victim 1 was in the 10th grade. Appellant asked to inspect her entire body to see if she was wearing a birth control patch. He was also concerned about the possibility she was cutting herself.[12] On the third occasion, appellant noticed a bruise on Victim 1's left breast and asked to examine it. She pulled down her top and exposed her breast. None of the incidents involved pulling a towel from her, which he denied doing.

Appellant testified there were three masturbation or simulated masturbation incidents involving Victim 1. The first time occurred when she was 15 years

---

[12] On cross-examination, Victim 1 testified that she sometimes cut herself.

old and in the ninth grade. She said she had "learned something . . . she had been doing to herself." He asked what it was. She covered herself with a blanket for a few seconds and then put her head out and said "that's what I do." The next day, appellant asked her to clarify what she had been doing. She simulated masturbation by placing her hand on her vaginal area over her clothing. Later, after Victim 1 turned 16, appellant asked if she was still "taking care of herself." She said she was, multiple times a day. He became "alarmed" and asked again what she was doing. As she had previously, she simulated masturbation over her clothing.

Appellant denied any of the incidents involved efforts to arouse himself. He denied ever offering money or privileges. He denied telling Alford or Mrs. Graff that he had offered money or privileges to the victims or that Victim 1's allegations were true. He said he had offered to leave home on the day he and Mrs. Graff were confronted by Victim 1 in order to reveal Victim 1's true intent, which was to move in with her boyfriend.[13]

The defense also called Dr. Marshall Cherkas, a forensic psychiatrist, who evaluated accused sexual offenders. He administered a test to appellant. The results did not fit those of a typical sexual predator in that appellant did not score high for poor impulse control and had a zero score for sexual maladjustment. From this test, Dr. Cherkas concluded appellant had a low potential for sexual molestation. He explained that the test could not completely rule out a person's potential for molestation or whether he or she had engaged in an abusive act on a particular occasion, only whether it was more or less likely.

### 4. Pertinent Instructions

The jury was instructed with the following version of CALCRIM No. 207: "It's alleged that the crimes occurred between July 1, 2004 and November 30, 2004. Now the People are not required to prove that the crimes took place exactly within that time frame but only that they happened when the victim was 14 or 15 years of age."

With respect to the elements of the crime, the jury was informed: "The defendant is charged with lewd or lascivious act[s] upon a child age 14 or 15 in counts 5, 6, and 7 sometime during the period when the victim was 14 or 15 years of age. [¶] The people have presented evidence of more than one act to prove that the defendant committed these offenses. You must not find the defendant guilty unless: [¶] One, you all agree that the People have proved

---

[13] Victim 1 had testified on cross-examination that appellant had threatened to report Victim 1's boyfriend to the police for statutory rape shortly before Victim 1 made her charges public.

that the defendant committed at least one of these acts, . . . and you all agree on which act he committed for each offense; or you all agree that the People have proved that the defendant committed all of the acts alleged to have occurred during this time period and have proved that the defendant committed at least the number of offenses charged."

The jury was also instructed with the following version of CALCRIM No. 3501: "The People presented evidence that the defendant committed other offenses of lewd or lascivious . . . acts upon a child age 14 or 15 that were not charged in this case. [¶] You may consider this evidence only if the people have proved by a preponderance of the evidence that the Defendant in fact committed the uncharged offenses. . . . [¶] . . . [¶] If you decide that the defendant committed the uncharged offense, you may, but are not required to consider that evidence for the limited purpose of deciding whether or not: [¶] the defendant acted with the intent of arousing, appealing to, or gratifying the lust, passions or sexual desires of himself or the child; or [¶] the defendant had a plan or scheme to commit the offenses alleged in this case." The court added: "[W]hat I have been talking about here is evidence of uncharged offenses. Counsel will be speaking to you and analyzing the evidence, and they may . . . refer to certain of these instructions by way of assisting you in analyzing them."

### 5. *Final Arguments*

In her opening argument, the prosecutor discussed all of the acts described by Victim 1—starting with appellant viewing her naked breasts once a month when she was 14, moving on to convincing her to expose her entire body "four or five" times when she was slightly older, and asking her to masturbate in his presence[14]—but did not specify which acts the jury could properly use to support the conviction. She simply said: "The court has told you that although the evidence may have . . . established more than one act, but you only need to find three acts . . . at least three."

In his closing argument, defense counsel stated: "The charges are that my client . . . on one occasion viewed [Victim 1's] body, and on two occasions viewed [her] breasts. No charge concerning the masturbation episodes. No charge concerning any other episodes. Those are the charges."

In her rebuttal argument, the prosecutor stated: "I am flabbergasted by the fact that the defense attorney could stand before you and without any shame misrepresent to you what the charges are. [¶] The court read you the charges,

---

[14] The prosecutor stated that Victim 1 was 15 years old when both masturbation incidents occurred.

and you are going to have them on each of the verdict forms. The charges are . . . counts 5, 6, and 7, the three counts involving [Victim 1], [appellant] committed a lewd act. [¶] And the court has defined for you what a lewd act is. There is nothing in the charging document that says anything about breast or masturbation or you should ignore the masturbation because, of course, according to the defense, its controversial. It's plain and simple. They know that masturbation is nothing more than a sex act and all of this, these acts that [appellant] had [Victim 1] perform escalated up to that sex act. Up to that ultimate sex act."

Calling the defense argument "nonsense," the prosecutor added: "What we care is whether it was lewd, whether it was lascivious. And we all know that it was, which is why he wants you to ignore the masturbation." Before concluding, she elaborated: "Here is another interesting thing. [Appellant] knows that he is charged with only three acts although he could have been charged with upward of 15 or 20. He knows he is charged with three lewd acts. So he makes up three stories about injuries and grass rashes and looking for patches, trying to excuse his behavior. [¶] And then his lawyer says, well the masturbation doesn't count. Don't look at that because the charges are very specific. It's only regarding the breasts. [¶] *No, the charges are very broad, and it, it includes any lewd act that he committed with [Victim 1] while she was 14 or 15 years old.* . . . The court never instructed you in terms of, well, only make the finding as to the breast. You have to ignore the masturbation. [¶] The court didn't instruct you of that. That's what the lawyer said because he knows when you, when you look, when you look at all of this conduct in its totality and the way it escalated from the very early stages of the lewd act to the ultimate stage of masturbation, . . . you see not only the pattern but you see the progression of where this thing was going. [¶] And all of it is lewd." (Italics added.)

### 6. *Motion for Mistrial*

At the conclusion of final argument, defense counsel moved for a mistrial, on the ground that the prosecutor had misrepresented the charges to the jury. Defense counsel pointed out that at the preliminary hearing, the commissioner had specified that counts 6 and 7 were based on the displays of Victim 1's breasts and count 5 corresponded to the charge that appellant persuaded her to remove her clothing; the commissioner had expressly dismissed the counts pertaining to masturbation. Counsel contended that the prosecution could proceed only on those counts sustained at the preliminary hearing.

The prosecutor vigorously disagreed: "[N]othing in the law says that the jury has to be guided or even restricted to what happens in the preliminary hearing or by the evidence that is presented in the preliminary hearing." She

contended that the commissioner "didn't exclude anything from [counts] 5, 6 and 7" and "even if he did, the jury is not guided by some findings of a different magistrate in a different proceeding that was performed for a different purpose." The trial court denied the request for mistrial and denied defense counsel's alternative request that the jury be informed as to which acts applied to the various counts.

### 7. Jury Question

After deliberations of approximately one day, the court received word that the jury had acquitted appellant on count 1, involving Victim 2. The jury asked the following question concerning the remaining counts: "Clarification on specific incidents for counts 5, 6 & 7. For example, is count 5 referring to a specific incident or to any of the incidents presented as evidence?" Defense counsel renewed his request to have the jury instructed that specific incidents corresponded to each count or to instruct the jury that the masturbation incidents did not form any part of the charges. The prosecutor reiterated her position that the People were not bound by "comments made by the judge in the preliminary hearing." She further took the position that each charge "spans a time frame of two complete years" and that CALCRIM No. 3501 regarding uncharged acts was the only instruction the jury needed to differentiate between charged and uncharged offenses.

The court asked the jury for clarification of its question. The jury sent out the following note: "The exact wording of counts 5, 6 & 7 as read to the jury by the Judge during jury instructions at the beginning of the trial, which is to include the time periods associated with each count. (For example, count 5 covers July 1, 2004 to November 30, 2004.)" The prosecutor argued that the timeframes set forth in the information made no difference because the jury need only find "that the offenses occurred while the victim was 14 or 15." Defense counsel countered that the commissioner had attached specific dates to the three incidents, amending the complaint to do so.

The court's only response to the jurors' questions was to reread CALCRIM No. 207, which, as given, provided: "It's alleged that the crimes occurred between July 1, 20[0]4 and November 30, 20[0]4. The People are not required to prove that the crimes took place exactly within that time frame, but only that they happened when the victim was 14 or 15 years of age." The jury spokesman asked the court to read the dates charged in the information for counts 6 and 7. The court complied. The jury returned to its deliberations.

8.  *Verdict and Sentence*

With respect to the charges involving Victim 1, the jury convicted appellant on counts 6 and 7 and acquitted him on count 5. The court sentenced appellant to the midterm of one year on count 6 and to a consecutive term of eight months on count 7.

# DISCUSSION

A.  *Appellant Was Wrongly Prosecuted for Charges Not Shown by the Evidence Presented at the Preliminary Hearing.*

■ Due process requires that "an accused be advised of the charges against him so that he has a reasonable opportunity to prepare and present his defense and not be taken by surprise by evidence offered at his trial." (*People v. Jones* (1990) 51 Cal.3d 294, 317 [270 Cal.Rptr. 611, 792 P.2d 643].) Thus, it is the rule that "a defendant may not be prosecuted for an offense not shown by the evidence at the preliminary hearing or arising out of the transaction upon which the commitment was based." (*People v. Burnett* (1999) 71 Cal.App.4th 151, 165–166 [83 Cal.Rptr.2d 629] (*Burnett*); see Cal. Const., art. I, § 14 ["Felonies shall be prosecuted as provided by law, either by indictment or, after examination and commitment by a magistrate, by information."].) Appellant contends his due process rights to notice of the charges against him were violated by the prosecution's decision to go forward with charges not established at the preliminary hearing. We agree.

1.  *The Prosecution Did Not and Could Not Have Filed an Information Containing Charges Not Found True by the Commissioner.*

■ Respondent contends the prosecution was not precluded from advancing a theory of guilt based on counts dismissed at the preliminary hearing under the rule that " '[w]here, . . . the magistrate either expressly or impliedly accepts the evidence and simply reaches an ultimate legal conclusion therefrom—i.e., whether or not such evidence adds up to reasonable cause that the offense had been committed—such conclusion is open to challenge by inclusion in the information.' " (Quoting *People v. Farley* (1971) 19 Cal.App.3d 215, 221 [96 Cal.Rptr. 478].)

The statutes governing criminal proceedings recognize that the judicial officers who preside over preliminary hearings are not infallible and, accordingly, permit the prosecution to file an information against a defendant containing charges not contained in the order of commitment. (§ 739.) By filing an information that contains additional charges not set forth in the order

of commitment, the prosecution affords the defendant notice it disagrees with the findings at the preliminary hearing and an opportunity to file a motion to set aside the information. (See § 995.) However, such additional offenses must be "*shown by the evidence taken before the magistrate to have been committed.*" (§ 739, italics added; see *People v. Pitts* (1990) 223 Cal.App.3d 606, 903 [273 Cal.Rptr. 757] (*Pitts*), quoting *Jones v. Superior Court* (1971) 4 Cal.3d 660, 664–665 [94 Cal.Rptr. 289, 483 P.2d 1241] (*Jones*) [" '[A]n information which charges the commission of an offense not named in the commitment order will not be upheld unless . . . the evidence before the magistrate shows that such offense was committed [citation] . . . .' "]; accord, *Burnett, supra*, 71 Cal.App.4th at p. 165.)

The authorities cited by respondent confirm that a charge may be asserted or reasserted only where the magistrate was incorrect in his or her assessment of the evidence presented at the preliminary hearing. (See, e.g., *People v. Superior Court (Henderson)* (1986) 178 Cal.App.3d 516, 523–524 [223 Cal.Rptr. 741] [where district attorney refiled murder charge dismissed by magistrate, appellate court accepted magistrate's factual findings as true, but concluded those findings "d[id] not inexorably lead to the conclusion that [the victim's] death occurred in the heat of passion and/or sudden quarrel"]; *People v. Superior Court (Day)* (1985) 174 Cal.App.3d 1008, 1022 [220 Cal.Rptr. 330] [where magistrate dismissed murder charge and held defendant to answer only for involuntary manslaughter, appellate court found "the murder charge is supported by the evidence presented to the magistrate . . ."]; *People v. Farley, supra*, 19 Cal.App.3d at pp. 221–222 [appellate court "carefully reviewed the transcript of the preliminary hearing and . . . concluded that the magistrate was in error in finding a lack of reasonable and probable cause that the offenses alleged [for sale and possession of narcotics] had been committed . . ."].) A review of the evidence presented at the preliminary hearing here establishes the validity of the commissioner's ruling: Victim 1 could not recall, even after repeated questioning, whether the masturbation incidents occurred before her 16th birthday; thus the prosecution failed to present evidence that the masturbation incidents fell within the timeframe necessary to establish a section 288, subdivision (c)(1) violation.

### 2. *The Prosecution Did Not and Could Not Have Amended the Information to Add Charges Based on the Masturbation Incidents at Trial.*

The court may allow amendment of the accusatory pleading to correct or make more specific the factual allegations of the offense charged at any stage of the proceeding, up to and including the close of trial, if there would be no prejudice to the defendant. (§ 1009; *Burnett, supra*, 71 Cal.App.4th at p. 165; *People v. Witt* (1975) 53 Cal.App.3d 154, 165 [125 Cal.Rptr. 653],

disapproved in part on another ground in *People v. Posey* (2004) 32 Cal.4th 193 [8 Cal.Rptr.3d 551, 82 P.3d 755]; *In re Man J.* (1983) 149 Cal.App.3d 475, 480 [197 Cal.Rptr. 20].) Section 1009 further provides, however, that "[a]n indictment or accusation cannot be amended so as to change the offense charged, nor an information so as to charge an offense not shown by the evidence taken at the preliminary examination."

Here, the prosecution did not seek, and the trial court did not permit, an amendment at any time. Respondent contends "the trial court's act of allowing the jury to convict appellant on the basis of [the masturbation] incidents amounted to a constructive amendment." As the authorities cited by respondent provide (see, e.g., *People v. Witt, supra,* 53 Cal.App.3d at p. 165), late amendments are not permitted where the defendant would be prejudiced. Appellant was prejudiced by the failure of the prosecution to make its theory clear prior to the last phase of closing argument. In cross-examining Victim 1, defense counsel had no reason to pin down the dates of the masturbation incidents or to impeach Victim 1 with her earlier testimony that she could not remember when either of the incidents occurred. As noted in appellant's reply brief, counsel would certainly have cross-examined Victim 1 differently had he been aware that the prosecution intended to go forward on the charges dismissed by the commissioner.

Moreover, even where the prosecution complies with the necessary procedures and no specific prejudice is shown, appellate courts are compelled to reverse convictions where substantial evidence was presented at trial that did not correspond to the charges established at the preliminary hearing. (See, e.g., *Burnett, supra,* 71 Cal.App.4th at p. 184; *Pitts, supra,* 223 Cal.App.3d at pp. 903–908; *People v. Dominguez* (2008) 166 Cal.App.4th 858, 870 [83 Cal.Rptr.3d 284] (*Dominguez*); *People v. Kellin* (1962) 209 Cal.App.2d 574, 576 [25 Cal.Rptr. 925]; *Gray v. Raines* (9th Cir. 1981) 662 F.2d 569, 574.) In *Burnett,* the prosecution presented evidence at the preliminary hearing that the defendant, a felon charged with possession of and brandishing a firearm, had committed those offenses with a .38-caliber revolver during an altercation with two witnesses/victims. (*Burnett, supra,* 71 Cal.App.4th at pp. 155–156, 164.) At trial, an acquaintance of the defendant testified that shortly before the charged incident, the defendant possessed a .357 magnum, which the acquaintance had previously taken from him and returned that day. (*Id.* at pp. 157, 164.) At the prosecution's request, the trial court amended the information to strike the words " '.38 caliber' " from the description of the handgun. (*Id.* at pp. 156, 167–168.) The jury was informed that the defendant could be convicted based on either incident, and the prosecutor urged the jurors to convict whether they believed the acquaintance or the other two witnesses. (*Id.* at pp. 156, 167–169.)

The Court of Appeal reversed. The court held that because the evidence at trial was of "two completely different incidents" which "could have supported two charges," but the evidence presented at the preliminary hearing encompassed only one of those incidents and the other "was never the subject of a preliminary hearing at which it could be determined whether there was probable cause to believe that offense had occurred," the defendant could not legally be convicted of the latter offense. (*Burnett, supra*, 71 Cal.App.4th at pp. 169–173.)

A similar conclusion was reached in *Dominguez*, where the defendant was charged with unauthorized use of a vehicle "on or about and between October 16, 2006, and October 18, 2006." (*Dominguez, supra*, 166 Cal.App.4th at p. 861.) Evidence presented at the preliminary hearing demonstrated that on October 16, a few days after the defendant had worked on the victim's car, the victim awoke to find the car missing. (*Id.* at p. 862.) At trial, however, the victim also testified that the defendant had taken the car on an unauthorized trip the day he worked on the vehicle, and the prosecutor moved to amend the information to encompass that scenario. (*Ibid.*) The amendment was made and the jury voted to convict. The Court of Appeal concluded it was reversible error to allow the jury to base its guilty verdict on the earlier incident, which was "not asked about nor . . . mention[ed]" at the preliminary hearing. (*Id.* at pp. 866–870.)

Respondent does not dispute the general rule forbidding prosecutions based on charges not established at the preliminary hearing. Nor does respondent deny that the commissioner who oversaw the instant preliminary hearing ruled that the allegations related to masturbation had not been established by the evidence presented.[15] Respondent's primary argument on appeal is that none of this matters, because appellant had actual notice of all the charges, including the allegation that he watched Victim 1 masturbate, and because appellant failed to establish prejudice.

Similar arguments were considered and rejected by the court in *Burnett*, where the Attorney General likewise contended that the defendant had suffered no prejudice because the change in theory did not require alteration of his defense strategy, and he had actual notice of both incidents through discovery of witness statements. (*Burnett, supra*, 71 Cal.App.4th at pp. 171, 176.) The court explained: "It is as a matter of law irrelevant whether a defendant is prejudiced by being prosecuted for an offense not

---

[15] Indeed, respondent states in its brief that "the specific dates of the . . . two masturbation incidents were not known until trial on August 28, 2007, when [Victim 1] testified that the first such incident occurred when she was 15 years old."

shown by the evidence at the preliminary hearing. . . . ' "Before any accused person can be called upon to defend himself on any charge prosecuted by information, he is entitled to preliminary examination upon said charge, and the judgment of the magistrate before whom such examination is held as to whether the crime for which it is sought to prosecute him has been committed, and whether there is sufficient cause to believe him guilty thereof. These proceedings are essential to confer jurisdiction upon the court before whom he is placed on trial. To say that he was accorded a fair trial upon an information filed against him without a substantial compliance with these jurisdictional requirements, and, therefore, that there had been no miscarriage of justice, hardly meets the situation. Such an argument would apply with equal force to the validity of the conviction upon an information filed by the district attorney in a case where no preliminary examination at all had been held. Such practice would result, in legal effect, in wiping out all provisions of the [C]onstitution and the Penal Code providing for a preliminary examination, and in clothing the district attorney with unlimited authority to file [an] information against whomsoever in his judgment he might consider guilty of crime." ' " (*Burnett, supra*, 71 Cal.App.4th at p. 177, italics omitted, quoting *People v. Winters* (1990) 221 Cal.App.3d 997, 1007 [270 Cal.Rptr. 740].)

■ With specific regard to the contention in *Burnett* that the defendant had notice, the court acknowledged that the defense had been given a copy of a taped interview in which the second gun incident was discussed. However, the defendant "did not . . . have notice that the district attorney intended to prosecute him for possession of the weapon observed by [the acquaintance] as a distinct offense from the possession based on the [other] incident." (*Burnett, supra*, 71 Cal.App.4th at p. 171.) The court further stated: "It is one thing to hold . . . that as a matter of due process, a defendant may be convicted of any offense of which he or she is given notice by the information combined with the preliminary hearing and other discovery. It is another thing altogether to hold that a defendant may be convicted upon proof of any incident giving rise to the same 'offense' as charged in the information and shown at the preliminary hearing, regardless of the absence of connection between the proven incident and that shown at the preliminary hearing." (*Id.* at p. 176.) "[T]he issue . . . is *not* notice of each witness's testimony but notice of the offense being prosecuted." (*Id.* at p. 174; see *Dominguez, supra*, 166 Cal.App.4th at p. 866 [error to assert second incident of taking vehicle without permission as additional basis for conviction at trial, even though defendant had notice of incident through investigator's report]; *Gray v. Raines, supra*, 662 F.2d at p. 574 [although defendant was aware of victim's age and presumptively had notice he could have been charged with statutory rape, "[h]e did not, however, have notice that he was being charged with that offense"].)

Respondent contends that the instant case is distinguishable because the evidence relating to the two masturbation incidents did not support a new offense, but was used to support existing charges. The same could be said concerning all the convictions reversed in the above cited cases. In *Burnett*, for example, the respondent argued the evidence "was not offered to prove a second offense but as further evidence of a single count of [firearm] possession, with discrepancies in the descriptions of the guns simply differences for the jury to consider in weighing the credibility of the witnesses." (*Burnett, supra,* 71 Cal.App.4th at p. 172.) The court firmly disagreed: "[T]his simply is not the case[.] [T]he evidence showed appellant possessed two different weapons in two separate incidents . . . and the unanimity instruction informed the jury it could convict on the basis of *either* incident." (*Id.* at pp. 172–173; see also *Dominguez, supra,* 166 Cal.App.4th at p. 866 [information amended to extend date range within which crime of taking vehicle without permission was alleged to have occurred and jury instructed it could find defendant guilty of single offense based on either incident established at preliminary hearing or incident established solely at trial]; *People v. Kellin, supra,* 209 Cal.App.2d at p. 575 [prosecution presented evidence of multiple checks allegedly stolen by defendant to support charge of theft of a single check established at preliminary hearing].)

■ Respondent insists that prosecutions under section 288 are entitled to different treatment because, as the Supreme Court recognized in *Jones*, child witnesses, traumatized by repeated acts of sexual abuse, often cannot recall or relate specific dates, locations or other details of the offenses and prosecutions under section 288 must sometimes be based on "generic testimony" and nonspecific charges. (*Jones, supra,* 51 Cal.3d at pp. 313–321.)[16] The Supreme Court did not address the issue before us—whether a section 288 conviction can be based on a specific incident which the prosecution attempted, but was unable, to establish at the preliminary hearing. However, the court provided insight into the type of notice a defendant must receive before the matter proceeds to trial. In this regard, the court first discussed the rule that the information need not provide the defendant notice "of the specific

---

[16] In *People v. Jones*, the court held that to substantiate charges of abuse under section 288, the victim need merely "describe the kind of act or acts committed with sufficient specificity, both to assure that unlawful conduct indeed has occurred and to differentiate between the various types of proscribed conduct (e.g., lewd conduct, intercourse, oral copulation or sodomy)"; "describe the number of acts committed with sufficient certainty to support each of the counts alleged in the information or indictment (e.g., 'twice a month' or 'every time we went camping')"; and "describe the general time period in which these acts occurred (e.g., 'the summer before my fourth grade,' or 'during each Sunday morning after he came to live with us'), to assure the acts were committed within the applicable limitation period." (*People v. Jones, supra,* 51 Cal.3d at p. 316, italics omitted.)

time or place of an offense, so long as it occurred within the applicable limitation period." (*Jones, supra,* 51 Cal.3d at p. 317.) The court explained this is because " 'in modern criminal prosecutions initiated by informations, the transcript of the preliminary hearing, not the accusatory pleading, affords a defendant practical notice of the criminal acts against which he must defend.' " (*Ibid.,* quoting *People v. Gordon* (1985) 165 Cal.App.3d 839, 869 [212 Cal.Rptr. 174].) It followed that the " 'modern answer' " to the "rhetorical inquiry as to how a defendant can prepare a defense against non-specific molestations charges 'is that, at a minimum, a defendant must be prepared to defend against all [section 288] offenses of the kind alleged in the information *as are shown by evidence at the preliminary hearing to have occurred within the timeframe pleaded in the information.*' " (*Jones,* at p. 317, italics added, quoting *People v. Gordon, supra,* 165 Cal.App.3d at pp. 870–871; see also *People v. Jennings* (1991) 53 Cal.3d 334, 358 [279 Cal.Rptr. 780, 807 P.2d 1009] ["Under modern pleading procedures, notice of the particular circumstances of an alleged crime is provided by the evidence presented to the committing magistrate at the preliminary examination, not by a factually detailed information."].)

The Supreme Court thus made clear in *Jones* that generic testimony from youthful victims, and section 288 charges that lack detail, do not violate a defendant's due process rights because criminal prosecutions are generally initiated by a preliminary hearing, which fills in any missing information required by the defendant to adequately prepare a defense. The above quoted language from *Jones* formed the basis for the court's opinion in *Pitts,* where the court directly addressed "the due process issue that exists where . . . many of the specific [section 288] offenses of which defendants were convicted were not shown by evidence adduced at the preliminary hearings." (*Pitts, supra,* 223 Cal.App.3d at p. 902.) There, the Attorney General argued, much as respondent does here, that as long as " 'the preliminary hearing provides evidence of a certain number of lewd acts upon the specified victim "on or about" the time frame in issue,' " the defendants were " 'on notice to defend themselves against any touchings "upon and with the body of" the victim within the time frame alleged in the information and at the [described location]' " and " '[the defendants] suffered no harm, surprise or inability to defend themselves from the charge merely from the absence in the preliminary hearing transcript of the specific act with those players identified in the charge . . . .' " (*Id.* at p. 905.) The court disagreed: "This argument ignores the differences in function between an information and the transcript of the preliminary hearing. It is true that an information need *not* notify a defendant of all the particulars of the crime charged[ because] [*t*]*hat role is left to the preliminary hearing transcript.* Where . . . the particulars are *not* shown by the preliminary hearing transcript, the defendant is *not* on notice in such a way that he has the opportunity to prepare a meaningful defense." (*Ibid.*) The

court further explained: "[A] preliminary hearing transcript affording notice of the time, place and circumstances of charged offenses ' "is the touchstone of due process notice to a defendant." ' " (*Id.* at p. 908, quoting *People v. Jeff* (1988) 204 Cal.App.3d 309, 342 [251 Cal.Rptr. 135].) "To hold . . . that due process is satisfied as long as the preliminary hearing evidence shows five violations of a statute and the evidence at trial shows the same number of violations of the same statute, regardless of the particulars[,] . . . would basically do away with use of the preliminary hearing transcript as a means for giving fair notice." (*Pitts, supra,* 223 Cal.App.3d at pp. 907–908.)

 Thus, the rule that generic testimony may be used to support section 288 charges due to the youth of the victim and the trauma that may have caused details to be forgotten has little relevance here. At the preliminary hearing, Victim 1 recalled and described five distinct instances of specific conduct that potentially violated the statute. There was no indication that Victim 1 was unable to recall specific incidents or that the prosecution intended to rely on generic testimony. From the evidence adduced at the preliminary hearing, it is clear that the prosecutor intended that each charge be established by a specific incident. The commissioner matched each instance described by the victim to a specific charge based on the dates alleged (or the amended dates); the commissioner concluded, based on the five offending acts described by the victim, that the two masturbation charges had not been established due to a lack of evidence that they occurred before the victim's 16th birthday. The commissioner thus made specific findings concerning which incidents were supported by an adequate factual basis and which were not, and dismissed the latter. As there was no valid basis to challenge the commissioner's ruling and no attempt was made to refile the charges, the prosecution's sole option was to go forward on the remaining charges. Instead, the prosecutor chose to ignore the commissioner's ruling, misinform the jury, and secure convictions on charges not properly before the court.[17]

## B. *The Error Requires Reversal of the Convictions.*

Having concluded that error occurred, we now consider whether it requires reversal. Respondent contends the error was harmless because the case turned

---

[17] We note that in the answer to appellant's earlier habeas corpus petition seeking bail on appeal, the district attorney contended that there was "no confusion as to the nature of the charges," stressing that the masturbation incidents were received "pursuant to Evidence Code section 1108" and quoting defense counsel's argument characterizing the charges as limited to viewing Victim 1's breasts and body. In this appeal, respondent reasserts the position taken by the prosecutor, contending that the masturbation incidents could properly form the bases for appellant's convictions. Although the Attorney General was not responsible for the district attorney's response to the habeas corpus petition, the inconsistent positions taken by the People further validate appellant's contention that the People violated his due process right to notice of the charges against him.

on the credibility of Victim 1.[18] This contention is based on a number of cases in which failure to give a unanimity instruction was deemed harmless because the defense was an all-or-nothing attack on the victim's credibility, and the jury was presented with no basis for distinguishing between the various offenses supported by the evidence. (See, e.g., *People v. Napoles* (2002) 104 Cal.App.4th 108, 119–120 [127 Cal.Rptr.2d 777]; *People v. Gonzalez* (1983) 141 Cal.App.3d 786, 791–792 [190 Cal.Rptr. 554], disapproved on other grounds in *People v. Kurtzman* (1988) 46 Cal.3d 322, 330 [250 Cal.Rptr. 244, 758 P.2d 572]; *People v. Deletto* (1983) 147 Cal.App.3d 458, 466–468 [195 Cal.Rptr. 233].) Here, in contrast, appellant provided different rationales for each alleged act and denied that they were undertaken for purposes of sexual gratification. Appellant's version of events grew less credible as the incidents escalated from a quick viewing of Victim 1's upper body to the more salacious activities. The jurors must have credited appellant's testimony to some extent, as they voted to acquit him of one of the charges relating to Victim 1 and of the sole charge relating to Victim 2. However, they must also have concluded that at some point, appellant's intent moved from parental concern to inappropriate fixation on sexual matters. The masturbation incidents may well have represented the point at which his version of events lost all credibility. Accordingly, the authorities cited by respondent to support harmless error are not helpful.

We also consider whether either masturbation incident presented a factually inadequate basis for appellant's guilt; this might have been the case had the evidence clearly established Victim 1 was over the age of 16 when the incident occurred. (See *Dominguez, supra,* 166 Cal.App.4th at p. 868; *People v. Guiton, supra,* 4 Cal.4th at p. 1129.) However, while Victim 1's testimony was clear that the first incident occurred when she was 15, her testimony was ambiguous concerning the date of the second masturbation incident. Moreover, the prosecutor repeatedly informed the jury that both incidents occurred when Victim 1 was 15 and urged the jury to convict on any of the incidents described by the victim, including both masturbation incidents. Accordingly, we cannot presume that either verdict was based on properly prosecuted charges, and must reverse the conviction on both counts.

---

[18] In *Dominguez,* the court did not resolve whether the error was structural requiring reversal per se, or whether prejudice should be determined under *People v. Guiton* (1993) 4 Cal.4th 1116, 1129 [17 Cal.Rptr.2d 365, 847 P.2d 45], in which the court stated: "If the inadequacy of proof is purely factual, of a kind the jury is fully equipped to detect, reversal is not required whenever a valid ground for the verdict remains, absent an affirmative indication in the record that the verdict actually did rest on the inadequate ground." The court in *Dominguez* concluded that under either standard, the judgment should be reversed. (*Dominguez, supra,* 166 Cal.App.4th at p. 870.) On the record before us, we reach the same conclusion.

## DISPOSITION

The judgment is reversed.

Epstein, P. J., and Suzukawa, J., concurred.

On February 9, 2009, the opinion was modified to read as printed above.