Filed 11/20/13  P. v. Gonzales CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E055779 |
| v. | (Super.Ct.No. FVA901830) |
| DANNY JOSEPH GONZALES, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Arthur Harrison, Judge.  Affirmed with directions.

Renee Rich, under appointment by the Court of Appeal, for Defendant and Appellant

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Steve Oetting, Lise S. Jacobson and Stacy Tyler, Deputy Attorneys General, for Plaintiff and Respondent.

1

A jury found defendant and appellant Danny Joseph Gonzales guilty of (1) one count of burglary (Pen. Code, § 459);[1] (2) two counts of robbery (§ 211); (3) three counts of making criminal threats (§ 422); (4) two counts of assault with a deadly weapon (§ 245, subd. (a)(1)); (5) two counts of false imprisonment (§ 236); and (6) one count of dissuading a witness from reporting a crime (§ 136.1, subd. (b)(1)). The trial court found true the allegations that defendant suffered two prior strike convictions. (§ 1170.12, subds. (a)-(d).) The trial court sentenced defendant to prison for an indeterminate term of 100 years to life and a determinate term of 10 years.

Defendant raises four issues on appeal. First, defendant contends his conviction for making criminal threats to a law enforcement officer must be reversed because it is based on an incident not presented at the preliminary hearing. Second, defendant contends substantial evidence does not support his conviction for making a criminal threat to Jose.[2] Third, defendant asserts his presentence custody credits were miscalculated and he is owed two more days of credit. Fourth, defendant contends he was incorrectly advised that he would be subject to lifetime parole if released from prison. The People agree with defendant's third and fourth contentions. We affirm the judgment with directions.

---

[1] All subsequent statutory references will be to the Penal Code unless otherwise indicated.

[2] We use first names for the non-law enforcement victims for the sake of clarity, because some of the non-law enforcement victims share the same last name. No disrespect is intended.

## FACTUAL AND PROCEDURAL HISTORY

Javier Corona (Javier), Eduardo de la Rosa (Eduardo), and Jose de la Rosa (Jose) shared an apartment in Fontana. On November 4, 2009, at approximately 1:00 a.m., Javier was at home. Javier's cousin, Omar Calvaria (Omar), was at the apartment with Javier. Javier was lying on the couch watching television, while Omar slept. Defendant entered the apartment through a sliding door in the back of the apartment. Javier did not know defendant.

Defendant "jumped" on top of Javier, took Javier's cellular telephone, and held a knife to Javier's neck. Defendant told Javier not to scream. Defendant said if Javier screamed, then he would kill Javier and Omar. Defendant and Javier stood up, and defendant walked Javier to Eduardo's and Jose's bedroom. Defendant looked around the room for items to take. Defendant took a car amplifier and clothing. Omar continued sleeping.

Defendant and Javier exited the bedroom. Defendant found a larger knife on a table and picked it up. Defendant placed the original, smaller knife in his pocket. Jose, Eduardo, and Uriel Camacho (Uriel) entered the apartment through the front door. Omar awoke as the men entered the apartment. Defendant struck Jose's head. Jose asked why defendant struck him. Defendant said he hated the men and the apartment "was his territory." Defendant told the men he "had killed police officers." Jose had previously seen defendant "walking around" the apartment complex; however, Jose did not know defendant.

3

Defendant continued to hold the knife. The men went to the living room area and sat down. Defendant asked Jose for his wallet. As Jose reached for his wallet, defendant struck Jose's forehead causing Jose to bleed heavily. Jose gave defendant his wallet. Defendant took money from the wallet. Defendant paced in the kitchen and dining area while holding the knife. Defendant wanted somebody to buy beer. Jose left the apartment when defendant gave him permission to purchase beer. Defendant instructed Jose not to call the police.

Jose went to his truck and called 911. Police officers arrived at the apartment. City of Fontana Police Officer Bowie entered the apartment. The officer found "a fixed blade steak knife in [defendant's] right front pocket." The officer also found a large butcher knife in the rear patio area of the apartment. Officer Moreno conducted an infield lineup. The victims, with the exception of Javier, individually identified defendant during the lineup.

Officer Bowie arrested defendant and escorted defendant to the patrol vehicle. Defendant became irate and angry; defendant yelled and pulled away from the officer. Defendant screamed, "'I'm from the Mexican Mafia. Eme, punks. Don't fuck with me. Fuck the cops. Put those Mexicans on the witness stand and see what happens. I ain't saying anything more.'" Defendant's statements caused Officer Bowie to be concerned about his and his family's safety due to "the history of the Mexican Mafia." Inside the patrol car, defendant threatened to kill Officer Bowie's wife.

## DISCUSSION

### A. PRELIMINARY HEARING EVIDENCE

#### 1. *PROCEDURAL HISTORY*

At the preliminary hearing, Officer Bowie testified about defendant becoming agitated upon being arrested. Officer Bowie said, "He began shouting that he was from the Mexican Mafia. He made several statements that he was [Eme] and that we shouldn't fuck with him, and he made several obscenities that followed that as well." Officer Bowie explained that he understood defendant's Mexican Mafia statements to be threats, and that the threats caused the officer to be concerned for his safety as well as the safety of those "around" him.

During trial, on direct examination, Officer Bowie testified about defendant's statements concerning being a member of the Mexican Mafia. During cross-examination, defendant's trial counsel asked the officer, "Now, when [defendant] made those statements, Officer, did he specifically say that he was going to hurt you?" The officer responded, "No." Defense counsel asked, "And did he specifically say he was going to kill you?" The officer answered, "He said he would kill my wife." Officer Bowie conceded that he left the direct threat to his wife out of the police report. The officer explained that he left the direct threat out of the report because he only documented "the incident leading up to the arrest," and the direct threat was made after defendant was in the patrol car.

5

After the close of the prosecution's trial evidence, defendant moved for an acquittal on all charges. (§ 1118.1.) The trial court asked for argument on the criminal threats count as it pertained to Officer Bowie. The prosecutor asserted there was sufficient evidence of a direct threat because defendant threatened Officer Bowie's wife. The prosecutor explained that defendant's statement qualified as a criminal threat because he made additional comments about being a member of the Mexican Mafia and he had a knife in his possession.

The trial court remarked that the evidence concerning the direct threat to the officer's wife appeared for the first time "in the middle of trial." The trial court said, "And that came out in questioning of the [officer] by defense counsel, absolutely understandable questioning based upon the content of the police reports. And then he flushed out that detail, with 'Oh, yeah, he threatened my wife while I was transporting him.' [¶] I'm not sure that you ever went through with the intent of having that threat as the crime the defendant would be charged with. I understand things happen mid trial and there's conformance to the evidence, amendments that can be made. I'm not sure that the charge would be amended because the complaining person is the same. Maybe I'm just thinking just a little bit of fundamental unfairness."

The prosecutor explained that she had been unaware of defendant's direct threat to the officer's wife until the officer disclosed the information during cross-examination. The prosecutor asserted that since the direct threat evidence was elicited, it took the prosecution "one step further" toward proving the threat charge. The trial

court denied the acquittal motion as it pertained to the charge of threatening Officer Bowie.

During closing argument, the prosecutor asserted the threat charge involving Officer Bowie was supported by the evidence that (1) defendant threatened the officer's wife, (2) defendant claimed to be a member of the Mexican Mafia, and (3) defendant possessed a knife.

2.      *ANALYSIS*

Defendant contends his conviction for threatening Officer Bowie must be reversed because it is based on an incident not presented at the preliminary hearing. Defendant asserts his due process rights were violated by this conviction and the trial court should have granted the acquittal motion (§ 1118.1). Alternatively, defendant asserts he was denied effective assistance of counsel because his trial attorney failed to object to the threat charge evidence not conforming to the evidence presented at the preliminary hearing.[3]

"Due process requires that 'an accused be advised of the charges against him so that he has a reasonable opportunity to prepare and present his defense and not be taken by surprise by evidence offered at his trial.' [Citation.]" (*People v. Graff* (2009) 170 Cal.App.4th 345, 360.) Thus, due process requires a defendant may only be prosecuted

---

[3] The People assert defendant forfeited this contention by failing to raise an objection at the trial court about the trial evidence not conforming to the preliminary hearing evidence. We choose to address the merits of defendant's contention because defendant moved for acquittal in the trial court (§ 1118.1) and has raised an ineffective assistance of counsel argument on appeal, thus making it simpler to resolve the issue on the merits.

7

for an offense shown by the evidence at the preliminary hearing or arising out of the transaction described at the preliminary hearing. (*People v. Burnett* (1999) 71 Cal.App.4th 151, 165-166.) A preliminary hearing should give a defendant notice of the time, place, and circumstances of the charged offenses. (*Id.* at p. 167.) Since defendant's contention involves undisputed facts and raises issues of federal constitutional rights, we apply the de novo standard of review. (*People v. Ault* (2004) 33 Cal.4th 1250, 1266.)

At the preliminary hearing, Officer Bowie testified that upon being arrested defendant became "increasingly agitated." Defendant made "several statements" about being a member of the Mexican Mafia and "he made several obscenities that followed that as well." Defendant's Mexican Mafia claims caused Officer Bowie to be concerned for his safety as well as the safety of "those around [him]." During the preliminary hearing, Bowie alluded to more statements made by defendant, which were not described in detail at the hearing, and that those statements caused Bowie to fear for people "around" him—it is unclear if "around" him refers to family, other police officers, or people that might be in the vicinity during a possible attack.

At the trial, Officer Bowie described defendant as "extremely irate and angry." Bowie explained that defendant's Mexican Mafia statements caused the officer to fear for the safety of his family as well as the other officers working with Bowie. Defendant was approximately 50 yards from the patrol car, moving toward the patrol car when he yelled about the Mexican Mafia. Bowie explained, "the entire time in the rear seat of [the] patrol vehicle" defendant was "completely irate, would not stop screaming, using

8

extreme obscenities towards [the officer] in the situation." The direct threat to the officer's wife was made while defendant was in the patrol car.

The record reflects defendant's threats to Officer Bowie and the officer's family were all part of a single transaction. Defendant became irate upon being arrested and began a tirade of threats and obscenities, which did not stop until after he was out of the patrol car. This trial evidence is supported by the preliminary hearing testimony which reflects defendant was "increasingly agitated," "shouting," and made "several statements" about the Mexican Mafia as well as "several obscenities." The preliminary hearing testimony is not as detailed as the trial testimony, but it describes in general terms the agitated verbal tirade that caused Officer Bowie to feel fear for himself and those around him.

Importantly, the preliminary hearing provided enough details that defendant could gather an understanding of the time, place, and circumstances that constituted the threat charge involving Officer Bowie. In particular, that on the night of the arrest, outside of the apartment, defendant made statements that caused the officer to fear for himself and others. Given this information, we conclude defendant's due process rights were not violated because he had sufficient information upon which to prepare and present his defense, in that the threats involving Officer Bowie were all part of a single transaction, an ongoing diatribe that began at defendant's arrest and continued in the patrol car.

9

Defendant asserts the threats were not part of a single transaction. Defendant contends there was one vague threat made on the way to the patrol car involving being a member of the Mexican Mafia, and a second direct threat made against the officer's wife while in the patrol car. Defendant contends these threats are separated by time and location and therefore are not part of a single transaction. Defendant's argument is not persuasive because the trial evidence reflects an ongoing diatribe of threats and obscenities against Officer Bowie, and the preliminary hearing evidence reflects multiple obscene and threatening statements made by defendant. Given this evidence, both the trial and preliminary hearing reflect defendant had a lengthy outburst that was ongoing in nature—it was not separated. Moreover, it was the statements about the Mexican Mafia that caused the other statements, such as killing the officer's wife, to carry more weight as a threat. As the officer explained, he felt concerned about the safety of himself and others due to the history of the Mexican Mafia. Thus, the statements were not separate threats, in that the entire context of the tirade caused the officer to feel sustained fear.

Defendant asserts the trial court erred by not granting the acquittal motion (§ 1118.1) because the threat against the officer's wife was not presented at the preliminary hearing. We have concluded *ante*, that sufficient evidence about the threat was presented at the preliminary hearing to provide defendant with adequate notice of the charge. Accordingly, we find defendant's argument concerning the acquittal motion to be unpersuasive as it is essentially the same argument as that raised *ante*. Further,

10

since we addressed the merits of defendant's contention, we do not address his alternative ineffective assistance of counsel argument.

B.   SUBSTANTIAL EVIDENCE

Defendant contends his conviction for threatening Jose must be reversed because it is not supported by substantial evidence.  We disagree.

"""In reviewing a criminal conviction challenged as lacking evidentiary support, '"the court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." [Citation.]' [Citations.]  "An appellate court must accept logical inferences that the jury might have drawn from the evidence even if the court would have concluded otherwise.  [Citation.]" [Citation.]' [Citation.]"  (*People v. Hovarter* (2008) 44 Cal.4th 983, 1014-1015.)

There are five elements in the offense of making a criminal threat (§ 422): (1) the defendant willfully threatened to commit a crime that would result in death or great bodily injury to another person; (2) defendant intended the statement to be perceived as a threat, even if the defendant did not intend to follow through with the threat; (3) the threat was so unequivocal, unconditional, immediate, and specific that it conveyed a gravity of purpose and an immediate prospect of the threat being executed; (4) the threat caused the victim to be in sustained fear for his or his family's immediate safety; and (5) the victim's fear was reasonable under the circumstances.  (*People v.*

11

*Wilson* (2010) 186 Cal.App.4th 789, 805.)  Defendant takes issue with the first, third, and fourth elements.

In regard to the first element, an ambiguous statement can satisfy the threat requirement, depending on the circumstances in which the statement was made—circumstances can give meaning to the words used.  (*People v. Butler* (2000) 85 Cal.App.4th 745, 753-754.)  Defendant broke into Jose's apartment, struck Jose, then said he hated Jose, the apartment was his territory, he was not afraid, and he had previously killed police officers.  Defendant was holding a knife as he made the statements.

Defendant's statements that he hated Jose, was not afraid, and had previously killed police officers, can reasonably be construed as a threat because defendant would have no reason to say he is not afraid unless some sort of act were about to occur.  Given the context of killing police officers and hating Jose, it can be inferred that the act was of a criminal nature and would be directed at Jose, specifically causing harm to Jose.  Thus, there is sufficient evidence to support a finding that defendant threatened to commit a criminal act that would result in death or great bodily injury.

The third element requires the threat be so unequivocal, unconditional, immediate, and specific that it conveys a gravity of purpose and an immediate prospect of the threat being executed.  Evidence of the surrounding circumstances, not just the words alone, are relevant to determining the third element.  (*People v. Butler*, *supra*, 85 Cal.App.4th at p. 754.)  Defendant broke into Jose's apartment, struck Jose, and held a knife while speaking to Jose.  Given the circumstances, it can reasonably be concluded

that defendant's threat was unequivocal, unconditional, immediate, specific, conveyed a gravity of purpose, and an immediate prospect of the threat being executed because it appeared defendant would cut or stab Jose in the apartment, given that defendant broke into the apartment with a knife and hit Jose.

The fourth element involves the victim's sustained fear. Sustained fear is more than momentary, fleeting, or transitory. (*In re Ricky T.* (2001) 87 Cal.App.4th 1132, 1140.) Jose testified that he was "very scared" during the incident with defendant. Jose felt the incident lasted "[m]ore than half an hour," and Jose did not feel free to leave during that time. Thus, it can be inferred Jose was in fear for more than 30 minutes. When Officer Bowie arrived at the apartment complex, he thought Jose appeared "upset and frightened." This is further support for finding Jose was scared for at least 30 minutes. Jose testified that he moved out of the apartment following the incident with defendant. It can be inferred from this evidence that Jose's fear did not end when defendant was arrested; rather, it continued for a period time following the arrest. The foregoing is substantial evidence that Jose suffered sustained fear. Accordingly, we conclude substantial evidence supports defendant's conviction for threatening Jose.

Defendant contends his conviction is not supported by substantial evidence because the victim was scared due to defendant's physical acts, not because of defendant's statements. Defendant's argument is not persuasive because Jose testified that he was "very scared" after defendant's comment concerning killing police officers. Given the timing of the fear following the statement, it can be inferred that defendant's

13

statements caused Jose to be frightened, thus, there is evidentiary support for the finding that defendant's words, not just defendant's physical acts, were a source of Jose's fear.

### C. CUSTODY CREDITS

Defendant contends the trial court incorrectly calculated his custody credits. Defendant believes he is entitled to two more days of credit. The People agree. Defendant was given 796 days of actual custody credits. Defendant was arrested and transported to jail on November 4, 2009. Defendant was sentenced on January 10, 2012. A defendant in entitled to custody credit for the day of arrest and the day of sentencing, even if those are partial custody days. (*People v. Smith* (1989) 211 Cal.App.3d 523, 526-527.) Thus, since there are 798 days from November 4, 2009, through January 10, 2012, defendant is entitled to two more days of actual custody credits. We will direct the trial court to amend the abstract of judgment and minute order to reflect actual custody credits of 798 days.

### D. PAROLE

Defendant contends the trial court erred by advising him that he would be subject to lifetime parole if he were to be released from prison. The People agree that defendant would only be subject to a maximum parole period of five years. We also agree that the trial court erred. Defendant's maximum parole period under the January 2012 law would have been five years. (§ 3000, subd. (b)(1).) Defendant does not request this court take any action in regard to this error. The error does not appear in the sentencing minute order; it is only in the reporter's transcript. Given that the error is not in the minute order, we provide no corrective directions in regard to this issue.

14

## DISPOSITION

The trial court is directed to amend the January 10, 2012, minute order and abstract of judgment to reflect defendant earned 798 days of custody credit for a total of 917 days (798 actual + 119 conduct).  In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER
J.

We concur:

McKINSTER
Acting P. J.

RICHLI
J.

15