Filed 7/26/16  P. v. Daniels CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>DESHAWN MICHAEL DANIELS, et al.,<br><br>    Defendants and Appellants. | F068304<br>(Consol. with Case No. F068305)<br><br>(Super. Ct. Nos. BF143458A,<br>BF147392A, BF147392B)<br><br>**OPINION** |

-ooOoo-

APPEAL from judgments of the Superior Court of Kern County.  Thomas S. Clark, Judge.

Han N. Tran, under appointment by the Court of Appeal, for Defendant and Appellant Deshawn Michael Daniels.

Gregory M. Chappel, under appointment by the Court of Appeal, for Defendant and Appellant Tevin Devon Williamson.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Catherine Tennant Nieto, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Deshawn Daniels and Tevin Williamson appeal from judgments of conviction entered upon jury verdicts in a joint trial on charges arising from a police chase. Daniels was found guilty of felony vehicular evasion of a peace officer (Veh. Code, § 2800.2) and misdemeanor hit and run (Veh. Code, § 20002, subd. (a)). Williamson, a passenger in the vehicle driven by Daniels, was found guilty of being a felon in possession of a firearm (Pen. Code,[1] § 29800, subd. (a)(1)) and of misdemeanor battery on a police dog (§ 600, subd. (a)). In addition, both men were convicted of active participation in a criminal street gang (§ 186.22, subd. (a)) and misdemeanor resisting arrest (§ 148, subd. (a)(1)).

The main issue on appeal is the legality of appellants' convictions for the gang offense proscribed by section 186.22, subdivision (a) (section 186.22(a)). As explained in *People v. Rodriguez* (2012) 55 Cal.4th 1125, 1138 (*Rodriguez*), this provision applies to any gang member who acts in concert with another gang member in committing a felony, regardless of whether the felony is gang-related. Although the statute requires criminal conduct by at least two gang members, a person may be convicted of active participation based on aiding and abetting principles. (*Ibid.*) In this case, jurors accepted the prosecution's argument that appellants aided and abetted each other during one or both of their respective felony offenses, i.e., that Daniels aided and abetted Williamson in the act of unlawfully possessing a firearm and/or that Williamson aided and abetted Daniels in his attempt to evade a pursuing police vehicle. Appellants dispute the sufficiency of the evidence to support either theory, and raise various related challenges to the admissibility of testimony by the prosecution's gang expert.

We are sympathetic to appellants' contention that the prosecution's theories of liability for the gang offense were weak. The argument that Daniels knew Williamson was armed at the time of the incident is attenuated, and there is no evidence of him being aware that Williamson was a convicted felon. However, the evidence is minimally

---

[1] Unless otherwise specified, all further statutory references are to the Penal Code.

sufficient to support the idea that Williamson aided and abetted Daniels in his attempt to evade police by willfully participating in and encouraging the commission of that crime. The convictions will therefore be upheld.

Appellants also allege prosecutorial misconduct, ineffective assistance of counsel, and sentencing error under section 654. We accept respondent's concession of the section 654 issue, but otherwise find no grounds for reversal. Williamson's related appeal of a probation revocation order, which was based on the jury's verdict, is therefore rejected on the merits.[2] Appellants' sentences will be modified to comport with the requirements of section 654. Subject to this modification, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The underlying incident occurred in Bakersfield on March 16, 2013. At approximately 8:00 p.m. that evening, Officers Robert Woods and Claude Brooks of the Bakersfield Police Department were on patrol near the intersection of East 3rd and South King Streets. Both officers were assigned to the police department's Special Enforcement Unit, also known as the Gang Unit. Their patrol car was unmarked, but had the distinctive appearance of a police cruiser: a white Ford Crown Victoria sedan equipped with side-mounted spotlights, a front "push bumper," a caged prisoner compartment, and interior red and blue lights that flashed when activated. The officers were also in uniform.

Officer Woods was driving west on East 3rd Street when he saw a Chevrolet Cobalt traveling in the eastbound lane. The car was occupied by two African-American males: Daniels, the driver, and Williamson, in the front passenger seat. Upon seeing the police vehicle, both men attempted to hide from view. Daniels leaned sideways, lowering his head and right shoulder by about 12 inches as he held the steering wheel

---

[2] On Williamson's motion, the probation revocation matter (F068305) was consolidated with the present appeal.

with his left hand. Williamson "slid down [in his seat] almost to the point where his head was barely visible."

Appellants' vehicle sped up as it passed by the patrol car. According to Officer Woods, "the rear tires were accelerating so fast that they actually caused a screeching sound with the roadway." Observing the Cobalt in his rear-view mirror, he saw it drive through a stop sign and make a sharp turn onto South King Street. This prompted him to make a U-turn and pursue the vehicle, as he intended to cite the driver for speeding and failing to obey a traffic sign. When Officer Woods entered South King Street, he witnessed the Cobalt pass in front of a motorist by crossing into the opposing lane of traffic, nearly hitting an oncoming car in the process. Officer Woods activated the patrol car's lights and siren at about the time the Cobalt returned to its own lane, and just before it barreled through a four-way stop sign at the intersection of South King and Texas Streets.

Daniels led police on a two-mile chase, committing several additional Vehicle Code violations as he drove. While heading east on Casa Loma Drive and just before reaching Cottonwood Road, Daniels made what Officer Woods described as a "semi-stop" next to a canal. Once the car had decelerated to a slow roll, Williamson opened the front passenger side door. While he was holding the door open, a law enforcement helicopter illuminated him with a spotlight. This apparently motivated Williamson to remain in his seat, and he pulled the door closed. Daniels then accelerated forward, turned left onto Cottonwood Road, and continued northbound before making another left turn at Reese Avenue. Appellants' vehicle traversed the residential neighborhood at an approximate speed of 45 miles per hour until it crashed into a fence located outside of a home on Windsor Street. Following the collision, appellants exited the car and ran in different directions. Williamson was seen holding a gun in his hand as he fled.

Officer Brooks had maintained radio contact with other law enforcement personnel during the vehicle chase, which led to multiple officers participating in the

4.

search for appellants. Daniels almost made it back to Cottonwood Road on foot, but was apprehended near the 1600 block of Reese Avenue by another member of the Gang Unit. A K-9 unit found Williamson hiding in the backyard of a home on Windsor Street. He resisted arrest, and consequently sustained multiple dog bites. A further search of the area led to the discovery of a nine-millimeter handgun, which was located one house over from where Williamson was arrested.

Appellants were charged by information as follows: count 1, felony evading (Daniels); count 2, felon in possession of a firearm (Williamson); count 3, carrying a loaded firearm as an active gang member in violation of section 25850, subdivision (c)(3) (Williamson [subsequently dismissed pursuant to section 995]); count 4, active participation in a criminal street gang (Daniels and Williamson); count 5, misdemeanor battery on a police dog (Williamson); count 6, misdemeanor hit and run (Daniels); and count 7, misdemeanor resisting arrest (Daniels and Williamson). Gang enhancement allegations (§ 186.22, subd. (b)) were included with counts 1 and 2. It was further alleged that appellants had suffered prior strike and serious felony convictions (§§ 667, subds. (a), (b)-(i), 1170.12, subds. (a)-(d)) and served prior prison terms (§ 667.5, subd. (b)).

The District Attorney's office wanted to charge Daniels with unlawful possession of a firearm, and included such allegations in the original felony complaint. However, the magistrate who presided over appellants' preliminary hearing found there was "absolutely no evidence that Mr. Daniels was aware of the firearm [that was in Williamson's possession at the time of the incident]." The magistrate's finding is central to Daniels's arguments on appeal concerning his conviction for the substantive gang offense. Further background information about this issue is provided in the Discussion, *post*.

Prosecution Case

Officer Woods testified at trial to most of the facts summarized above, including Williamson's possession of a handgun at the time of flight. His account of the events was supplemented by those of Officers Keegan Gavin, Jeff Martin, Thomas Meek, and Keith Schlecht. Deputy Justin Weidenkopf of the Kern County Sheriff's Department testified regarding his operation of the helicopter spotlight.

Officer Meek's testimony supported the resisting arrest charge against Daniels. He had chased Daniels and caught up with him as he was climbing over a chain link fence. Daniels ignored a command to stop climbing, so Officer Meek hit him with a baton, knocking him to the ground. Daniels got up and continued to run, but the officer was able to take him down with a second baton strike. Not knowing if the suspect was armed, Officer Meek took the precautionary measure of punching Daniels in the face, twice, before placing him in handcuffs. A search conducted incident to arrest did not uncover any weapons.

Williamson was apprehended by Officer Martin, who also claimed to have seen him in possession of a firearm. Officer Martin was assisted by a police dog named Titan. When Williamson refused to surrender, Titan was ordered to bite him. Officer Martin testified that Williamson reacted to being bitten on the ankle by pummeling the dog's head with his fists, striking the animal at least ten times. Titan let go of the ankle and bit Williamson on his right forearm, but Williamson continued to hit the dog with his left hand. Seeing his canine partner in distress, Officer Martin intervened by deploying pepper spray into Williamson's eyes. When the pepper spray proved ineffective, Officer Martin punched him twice in the face. Williamson sustained an additional dog bite on his left arm before he was restrained with handcuffs.

Multiple police officers testified to their personal knowledge of admissions made by Daniels and Williamson regarding membership in a gang called the Country Boy Crips. Included among those witnesses was Officer Michael Ko, who had spoken with

6.

appellants on January 19, 2013, less than two months prior to the subject incident. Both admitted their gang membership to him at that time, which he documented in a police report.

Officer Nathan McCauley testified as the prosecution's gang expert. His testimony provided background information about the Country Boy Crips, which he described as a local criminal street gang whose members are predominately African-American. The gang's traditional territory is bordered to the north by East Belle Terrace, to the east by Cottonwood Road, to the south by East White Lane, and to the west by Union Avenue. Appellants' earlier presence at the intersection of South King and East 3rd Streets was noteworthy because of that area's connection to a rival gang known as the East Side Crips. In other words, appellants were seen driving through rival turf and had attempted to evade police by retreating to the "heart" of Country Boy Crips territory.

Officer McCauley further testified to his belief that members of the Country Boy Crips and the East Side Crips were responsible for a series of shootings in Bakersfield that happened between December 2012 and March 2013. There were eight separate incidents, which occurred on December 5, 6, and 26, 2012; January 29, 2013; February 19, 23, and 27, 2013; and March 2, 2013. Each of the shootings took place within gang territories and/or involved victims who were known to be gang members or associates. Although police suspected the incidents were connected to the ongoing rivalry between the East Side Crips and Country Boy Crips, they were unable to develop any suspects and the crimes remained unsolved at the time of appellants' trial.

Characterizing the expert's testimony as evidence of a three-month "shooting war" between rival gangs, the prosecution argued that Daniels and Williamson were in East Side Crips territory on the night of March 16, 2013 for the purpose of committing a drive-by shooting on behalf of the Country Boy Crips. Accordingly, a hypothetical scenario based on the trial evidence was posed to Officer McCauley for the purpose of eliciting opinions supportive of the section 186.22, subdivision (b) enhancement

7.

allegations. The expert agreed that the individuals described in the hypothetical were in East Side Crips territory "looking for a target of opportunity to commit a shooting." He also opined that under the circumstances, the crimes of unlawful firearm possession and evading police were committed for the benefit of, at the direction of, and/or in association with, a criminal street gang.

Defense Case

Daniels testified in his own defense. He admitted to being a former member of the Country Boy Crips, but claimed to have dropped out of the gang approximately seven months prior to the subject incident. He also denied committing any of the Vehicle Code violations that Officer Woods testified to witnessing, i.e., speeding, running red lights and stop signs, and driving the wrong way against oncoming traffic.

In Daniels's version of events, he was driving "normally" and did not realize the police were trying to pull him over until he was on Casa Loma Drive. Upon seeing the lights of the patrol car and hearing its siren, he pulled over near the canal with every intention of cooperating with the officers. However, the spotlight from the sheriff's helicopter made him panic and his thoughts turned to a fatal police shooting that had taken place (three years earlier) in the same part of town. Fearing for his life, Daniels resumed driving, continuing to obey traffic signals and following the speed limit until he reached the end of Reese Avenue.

Refuting the hit and run charge, Daniels alleged that he exited the vehicle before it struck any objects, though he conceded the car was still in gear when he abandoned it. Nevertheless, he claimed to have been unaware that it crashed into a fence. Daniels acknowledged his flight from the scene, but insisted he never heard any of the officers identify themselves as police or tell him to stop running. Contrary to Officer Meek's testimony, Daniels said he gave up on his escape efforts due to exhaustion. Unable to continue running, he lay face down on the ground with his arms outstretched. When

8.

Officer Meek found Daniels in this prone position, he struck him with a baton and punched him in the face.

Daniels described Williamson as a mere acquaintance, but definitively stated that Williamson was not a member of the Country Boy Crips. He did not know Williamson was armed at the time of the incident. Daniels likewise denied the two of them had discussed any type of criminal activity that night, gang-related or otherwise.

Daniels's defense also included testimony by a retained gang expert named Harlan Hunter. Mr. Hunter opined that Daniels was not a member of the Country Boy Crips at the time of his arrest. He was also of the opinion that evading is not the type of offense that benefits a gang or furthers a gang's criminal activities, and he had never heard of a person committing an evasion crime at the direction of a gang.

Williamson did not testify. His trial counsel stipulated to his status as a convicted felon at the time of the incident, but denied he was in possession of a gun. More specifically, he accused the police officers of perjuring themselves on the witness stand. Williamson's theory of the case was that the officers made up a story about seeing him holding a gun in order to avoid liability for their alleged use of excessive force.

Verdicts and Sentencing

The jury found appellants guilty on all counts, but hung on the section 186.22, subdivision (b) allegations. A mistrial was declared as to the gang enhancements, which were later dismissed at the prosecution's request. The allegations concerning appellants' prior convictions and prior prison terms were found true in a bifurcated bench trial. The trial court also found that Williamson's current offenses violated the terms of his probation in an earlier case.

Daniels was sentenced to 11 years in prison. Using the count 4 gang participation conviction as the principal term, the trial court imposed the upper term of three years, which was doubled to six years because of the prior strike and further enhanced by a consecutive five-year term for the prior serious felony conviction. Sentencing for the

remaining counts was as follows: the upper term of three years for count 1, doubled to six years because of the prior strike, plus six-month jail terms for each of the misdemeanors (counts 6 and 7), all to be served concurrently with the sentence on count 4.

Williamson received an 11-year prison sentence based on the same calculations for the gang offense under count 4 and his prior strike and serious felony convictions. Sentencing for the remaining counts was as follows: the upper term of three years for count 2, doubled to six years because of the prior strike, plus six-month jail terms for each of the misdemeanors (counts 5 and 7), all to be served concurrently with the sentence on count 4. For violating the terms of his probation, the trial court ordered Williamson's probation revoked and imposed a three-year term for the underlying conviction (vehicle theft with a prior (Veh. Code, § 10851, subd. (a), § 666.5, subd. (a)), to be served concurrently with the sentence imposed in the present case.

## DISCUSSION

### Sufficiency of the Evidence

Appellants dispute the sufficiency of the evidence supporting their convictions for active participation in a criminal street gang. The claim is subject to a deferential standard of review. Under that standard, we must determine " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (*People v. Marshall* (1997) 15 Cal.4th 1, 34 (*Marshall*), original italics.) "An appellate court must accept logical inferences that the jury might have drawn from the evidence even if the court would have concluded otherwise." (*People v. Combs* (2004) 34 Cal.4th 821, 849.)

"The elements of the gang participation offense in section 186.22(a) are: First, active participation in a criminal street gang, in the sense of participation that is more than nominal or passive; second, knowledge that the gang's members engage in or have engaged in a pattern of criminal gang activity; and third, the willful promotion, furtherance, or assistance in any felonious criminal conduct by members of that gang."

10.

(*Rodriguez*, *supra*, 55 Cal.4th at p. 1130.)  Appellants' arguments pertain to the third element, which will be the sole focus of our analysis.  Since no challenges have been made regarding the first and second elements, we assume, without deciding, that the record contains adequate proof of those prerequisites.  (See *People v. Garza* (2005) 35 Cal.4th 866, 881 ["on appeal a judgment is presumed correct, and a party attacking the judgment, or any part of it, must affirmatively demonstrate prejudicial error"]; *People v. Brewer* (2015) 235 Cal.App.4th 122, 139 [issues not raised in an appellate brief are considered forfeited or abandoned].)

The California Supreme Court has construed section 186.22(a) as requiring "that felonious criminal conduct be committed by at least two gang members, one of whom can include the defendant if he is a gang member." (*Rodriguez*, *supra*, 55 Cal.4th at p. 1132.)  The offense can thus be proven in two different ways.  "One may promote, further, or assist in the felonious conduct by at least two gang members by either (1) directly perpetrating the felony with gang members or (2) aiding and abetting gang members in the commission of the felony." (*People v. Johnson* (2014) 229 Cal.App.4th 910, 920-921.)

The prosecution argued that Daniels and Williamson aided and abetted each other, emphasizing the theory that Daniels's supposed knowledge of Williamson's gun possession is what motivated him to commit the vehicular evasion, and the evasion itself was a form of aiding and abetting.  Appellants' briefs focus on whether Daniels's knowledge of the firearm can be inferred from the facts in the record.  However, the parties concede that their claim necessarily fails if there is sufficient evidence to show Williamson aided and abetted Daniels in his commission of the evading offense.

The prosecution's theory of Daniels being an aider and abettor to Williamson's violation of section 29800, i.e., possession of a firearm by a convicted felon, was of questionable viability.  It would have made more sense had there been evidence of Daniels furnishing Williamson with the firearm, but this was neither argued by the

11.

prosecutor nor suggested by the facts. Aside from the debate over Daniels's knowledge of the gun's presence, the prosecution failed to show that he knew Williamson was a convicted felon.

"A 'person aids and abets the commission of a crime when he or she, acting with (1) knowledge of the unlawful purpose of the perpetrator; and (2) the intent or purpose of committing, encouraging, or facilitating the commission of the offense, (3) by act or advice aids, promotes, encourages or instigates, the commission of the crime.' " (*Marshall, supra,* 15 Cal.4th at p. 40.) In light of these requirements, Daniels argues it was incumbent upon the prosecution to prove his knowledge of Williamson's prior felony conviction. The question of whether California law requires such knowledge has apparently never been addressed in a published decision.[3] It is unnecessary for us to resolve that issue, since there is sufficient evidence to support the alternative theory that Williamson aided and abetted Daniels in the crime of evading.

---

[3] In *People v. Snyder* (1982) 32 Cal.3d 590 (*Snyder*), the California Supreme Court held that knowledge of one's legal status need not be shown because a defendant is necessarily aware of their own criminal history and cannot escape liability by claiming ignorance as to whether a prior conviction was a felony or a misdemeanor. (*Id.* at pp. 592-593.) The *Snyder* opinion did not consider the issue in the context of aiding and abetting liability, where the alleged aider and abettor might not know that the principal was previously convicted of a crime. The closest cases we have found are federal circuit court decisions, and there appears to be a split of authority on the issue. The Ninth Circuit has held that federal law does not require the government to prove an aider and abettor knew the principal was a felon. (*U.S. v. Canon* (9th Cir. 1993) 993 F.2d 1439, 1442 (*Canon*); but see *U.S. v. Graves* (9th Cir. 1998) 143 F.3d 1185, 1188, fn. 3 ["[W]e have serious reservations regarding the soundness of [*Canon*]" in part because the decision contains no analysis and insufficient authority].) The Third and Sixth Circuits have adopted the position advocated by Daniels. (*U.S. v. Gardner* (6th Cir. 2007) 488 F.3d 700, 715 [rejecting the *Canon* holding and concluding that a prosecutor must prove the aider and abettor knew or had reason to know the principal was a convicted felon]; *U.S. v. Xavier* (3d Cir. 1993) 2 F.3d 1281, 1286 [prosecution must show aider and abettor knew or had reason to know that principal was a convicted felon].)

We are guided by the principles relied upon by the California Supreme Court in *People v. Nguyen* (2015) 61 Cal.4th 1015 (*Nguyen*), where a defendant who was present in a car at the time of a drive-by shooting was found guilty of active participation in a criminal street gang pursuant to an aiding and abetting theory. " 'Among the factors which may be considered in making the determination of aiding and abetting are: presence at the scene of the crime, companionship, and conduct before and after the offense.' " (*Id*. at p. 1054.) "Although defendant's ' "mere presence alone at the scene of the crime is not sufficient to make [him] a participant … ," ' his presence in the car ' "may be [a] circumstance[] that can be considered by the jury with the other evidence in passing on his guilt or innocence." ' " (*Id*. at p. 1055.)

Williamson's presence at the scene was firmly established, and there was evidence that he and Daniels were fellow gang members with a history of associating with one another. Therefore, the factors of presence and companionship weigh in favor of the jury's verdict. As discussed, one who "promotes, encourages or instigates" the commission of the crime may be characterized as an aider and abettor. (*People v. Cooper* (1991) 53 Cal.3d 1158, 1164.) Aiding and abetting by Williamson in the form of promotion or encouragement was inferable from his actions before, during, and after Daniels's commission of the evading offense. First, there was testimony that Williamson ducked down in his seat as soon as he saw the patrol car. His furtive behavior permitted the inference that he shared Daniels's intent to flee from or elude police officers. Second, and perhaps most critically, Williamson could have exited the car in the middle of the chase, but closed the passenger door after being illuminated by the spotlight of the sheriff's helicopter. The trier of fact could have reasoned that an innocent man would have taken the opportunity to submit to the police's show of authority, and Williamson's act of shutting the door demonstrated encouragement and his complicity in the crime. Third, Williamson fled on foot as soon as Daniels crashed the car. His flight reinforces the conclusion that he shared the direct perpetrator's unlawful intent or purpose. Finally,

13.

Williamson's illegal possession of a firearm provided a strong motive for him to promote, encourage, or instigate the target offense.

Williamson submits that "countless possibilities come to mind as to why the car came to a semi-stop and [he] opened the front door," and argues it is "overly speculative" to conclude he "acquiesce[ed] in the felony evasion." His trial counsel argued to the jury that Daniels might have been holding him hostage in the car. Regardless of how many potential explanations the facts allow, "[a] reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support" ' the jury's verdict." (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.) As in *Nguyen*, *supra*, the sufficiency of the evidence is a close issue in this case. (*Nguyen*, *supra*, 61 Cal.4th at p. 1056.) However, viewing the record in the light most favorable to the judgments and considering the factors of presence, companionship, and conduct before, during, and after the commission of the crime, we conclude the evidence permits reasonable inferences of guilt. We therefore affirm appellants' convictions under section 186.22(a) based on the theory that Daniels and Williamson were gang members who acted in concert in committing a felony offense, i.e., vehicular evasion of a peace officer, with Daniels's liability stemming from his actions as the direct perpetrator and Williamson's liability flowing from his role as an aider and abettor.

**Due Process**

Daniels contends that the trial court violated his constitutional due process rights by allowing the prosecution to argue a theory of liability for the gang offense based on his alleged aiding and abetting of Williamson's firearm possession. The claim focuses on the dismissal of certain charges at the preliminary hearing stage. Daniels cites to *People v. Burnett* (1999) 71 Cal.App.4th 151 (*Burnett*) and *People v. Graff* (2009) 170 Cal.App.4th 345 (*Graff*) for the proposition that a prosecutor cannot advance a theory of guilt at trial based on charges that were dismissed at the preliminary hearing.

Background

In the original felony complaint, Daniels was accused of committing two gun offenses: possession of a firearm by a convicted felon and carrying a loaded firearm while being an active participant in a criminal street gang. Both charges were predicated on a theory of constructive possession, which requires a knowing exercise of dominion and control over the firearm. (*People v. Brimmer* (2014) 230 Cal.App.4th 782, 795.) The magistrate who presided over the preliminary hearing dismissed the charges for the following reasons: "There is absolutely no evidence that Mr. Daniels was aware of the firearm. What is absent from this hearing, which would have changed the holding order, was any testimony that the custom and practice within the Country Boy Crips criminal street gang is for gang members to show each other what they're packing, so to speak, particularly when they are in a vehicle…. [T]here's no significant evidence to show that [Daniels] actually possessed that firearm. That may change for trial purposes, if this is refiled or whatever is done by the People." Interestingly enough, the magistrate concluded there was "more than sufficient basis to hold him to answer" to the charge of active gang participation under section 186.22(a).

At trial, defense counsel successfully moved in limine to prevent the prosecution's gang expert from expressing an opinion as to whether Daniels was aware that Williamson was armed at the time of the incident. In granting the motion, the trial court qualified its ruling by stating the prosecution could argue to the jury that Daniels's knowledge of the firearm was inferable from the circumstantial evidence. Defense counsel later moved for a mistrial based on the prosecution's use of a hypothetical question that asked its gang expert to assume the driver of the vehicle knew his passenger was armed at the time of the vehicular evasion. The defense argued that because the magistrate had previously made a "factual finding" regarding Daniels's lack of knowledge, the finding had a preclusive effect on the prosecution's theories of liability for the substantive gang offense. The same argument was made in support of a motion for acquittal (§ 1118.1).

15.

The trial court denied both motions, ruling that it was not bound by the magistrate's conclusions regarding the evidence of Daniels's awareness of the gun. In the trial court's view, there was sufficient circumstantial evidence to support a finding that Daniels knew there was a gun in the car.

Analysis

In California, felonies are prosecuted "either by indictment or, after examination and commitment by a magistrate, by information." (Cal. Const. art. 1, § 14.) Daniels's arguments are based on the significance of a magistrate's factual findings at the preliminary hearing stage, a principle best illustrated by the seminal case of *Jones v. Superior Court* (1971) 4 Cal.3d 660 (*Jones*). The *Jones* defendant was charged with rape, oral copulation, and sodomy. At the preliminary hearing, the magistrate expressed disbelief of the victim's testimony and affirmatively found that neither sodomy nor oral copulation had taken place, and no force had been used. The defendant was held to answer only for "statutory rape," a crime not alleged in the original complaint. Despite the magistrate's findings, the district attorney filed an information charging all of the originally pleaded offenses. The California Supreme Court held that the factual determinations made by the magistrate, when he found the victim's testimony lacked credibility, barred prosecution of the charges rejected at the preliminary hearing. (*Id.* at pp. 663-664, 667-668.) Under *Jones*, "an information which charges the commission of an offense not named in the commitment order will not be upheld unless (1) the evidence before the magistrate shows that such offense was committed and (2) the offense was transactionally related to offenses forming the basis of the commitment." (*Ondarza v. Superior Court* (1980) 106 Cal.App.3d 195, 201 (*Ondarza*).)

The parties dispute whether the magistrate below made factual findings or conclusions of law as to the lack of evidence concerning Daniels's knowledge of Williamson's firearm possession. The distinction is important, since a magistrate's legal conclusion that the evidence is insufficient to support a holding order does not preclude

16.

the prosecution from including a transactionally related charge in the information. (*People v. Superior Court* (*Henderson*) (1986) 178 Cal.App.3d 516, 521 (*Henderson*).) Respondent may have the better argument, considering "the magistrate is not a trier of fact." (*People v. Slaughter* (1984) 35 Cal.3d 629, 637.) " 'Within the framework of his limited role, . . . the magistrate may weigh the evidence, resolve conflicts, and give or withhold credence to particular witnesses.' " (*Ibid*.) Determinations regarding the sufficiency of the evidence are typically viewed as issues of law rather than fact, though it can be difficult "to delineate the distinction between a factual finding and a legal conclusion." (*Henderson*, *supra*, 178 Cal.App.3d at p. 521; see *People v. Leon* (2015) 61 Cal.4th 569, 596 ["A magistrate's material factual findings are binding on the superior court … however, the prosecution may challenge the magistrate's legal conclusion that the evidence was insufficient to show that the charged offense occurred]; *Ondarza*, *supra*, 106 Cal.App.3d at p. 201 ["The magistrate did not indicate that he thought the testimony . . . was incredulous [*sic*] or improbable. Instead, the magistrate voiced a personal opinion that there was insufficient evidence . . . . [S]uch a determination is a legal conclusion."].)

In any event, the two cases upon which Daniels relies, *Burnett*, *supra,* and *Graff*, *supra*, are distinguishable. Both involved the application of section 1009, which codifies the rule that an information cannot be amended "so as to charge an offense not shown by the evidence taken at the preliminary examination." In *Burnett*, a divided panel of the First District Court of Appeal reversed the defendant's conviction because of an amendment that allowed for a guilty verdict based on a different set of facts than those presented at the preliminary hearing. The defendant was charged by information with unlawful possession of a .38-caliber revolver in connection with eyewitness accounts of him brandishing such a firearm at a particular place and time. At trial, the prosecution was allowed to amend the information to delete the words ".38 caliber," and thereafter elicited testimony from a new witness who had seen the defendant in possession of a .357-caliber revolver during an incident unrelated to the one discussed at the preliminary

hearing. The witness's description of the firearm differed from the preliminary hearing evidence in terms of caliber, barrel length, and the distinctive characteristics of its hammer and handle. (*Burnett*, *supra*, 71 Cal.App.4th at pp. 155-156, 164, 167-168.) The majority in *Burnett* concluded that the amendment allowed the defendant "to be convicted based on a completely different incident than that shown by the evidence at the preliminary hearing," and rejected the respondent's harmless error analysis. (*Id*. at pp. 171, 177.) The dissenting opinion argued there was "absolutely no statutory or constitutional impediment" to the result of the trial proceedings. (*Id*. at p. 189 (dis. opn. of Haerle, J.)

In *Graff*, the defendant successfully appealed his convictions on two counts of committing a lewd or lascivious act with a child of 14 or 15 years in violation of section 288, subdivision (c). He was originally charged with six such counts, but the victim only attested to five incidents at the preliminary hearing. Two of those incidents involved acts of masturbation, but the victim could not recall when those events took place. The magistrate found the victim's testimony was "too vague concerning the dates of the two masturbation incidents to constitute substantial evidence that the incidents occurred before she turned 16." (*Graff*, *supra*, 170 Cal.App.4th at pp. 349-351.) Accordingly, the counts pertaining to the masturbation incidents were dismissed, as was the count for which no supporting evidence had been proffered. The magistrate "expressly matched each remaining count with a specific incident from [the victim's] testimony," and the defendant was held to answer on those particular charges. A subsequently filed information conformed to the magistrate's rulings. (*Id*. at p. 351.)

At trial, the *Graff* defendant lost a motion in limine to exclude evidence of the alleged masturbation incidents. The prosecution represented that the People were not attempting to proceed on the previously dismissed counts, but argued such evidence was admissible under Evidence Code section 1108. The trial court allowed the evidence to be admitted for the purpose of establishing motive or intent. (*Graff*, *supra*, 170 Cal.App.4th

at pp. 352-353.) The victim went on to testify about both masturbation incidents, this time purporting to remember that the first one occurred when she was 15 years old. (*Id*. at p. 354.) Later, during rebuttal arguments, the prosecutor emphatically told the jury it could convict the defendant based on the masturbation incidents. Blindsided by this argument, defense counsel alternatively moved for a mistrial or a jury instruction specifying which of the alleged acts corresponded to the counts in the information. The trial court denied both motions. When the jury later requested clarification as to the specific incidents to which each count pertained, the court simply advised that it should re-read one of the pattern instructions (CALCRIM No. 207). (*Id*. at pp. 358-359.)

On appeal, the Fourth District concluded the defendant's "due process rights to notice of the charges against him were violated by the prosecution's decision to go forward with charges not established at the preliminary hearing." (*Graff* at p. 360.) The appellate court agreed with the magistrate's assessment of the evidence and acknowledged the binding effect of those conclusions. "[T]he prosecution's sole option was to go forward on the remaining charges. Instead, the prosecutor chose to ignore the [magistrate's] ruling, misinform the jury, and secure convictions on charges not properly before the court." (*Id*. at pp. 361, 367.)

The present case is unlike *Burnett* or *Graff* because the conviction being appealed is based on the exact same incident and circumstances shown by the evidence at the preliminary hearing. Section 1009 is not implicated because there was no amendment to the information. Appellants were both held to answer on the gang participation charge, and had notice of the evidence upon which the prosecution would rely to prove its case. "[A] preliminary hearing transcript affording notice of the time, place and circumstances of charged offenses ' "is the touchstone of due process notice to a defendant." ' " (*People v. Pitts* (1990) 223 Cal.App.3d 606, 908.)

Assuming arguendo that the trial court erred by allowing the prosecution to argue its theory of Daniels aiding and abetting Williamson's unlawful possession of a firearm,

19.

the error does not require reversal. "The nature of [the] harmless error analysis depends on whether a jury has been presented with a legally invalid or a factually invalid theory." (*People v. Perez* (2005) 35 Cal.4th 1219, 1233.) "[W]hen one of the theories presented to a jury is factually inadequate, such as a theory that, while legally correct, has no application to the facts of the case, we apply [the standard used for errors of state law]. [Citation.] In that instance, we must assess the entire record, 'including the facts and the instructions, the arguments of counsel, any communications from the jury during deliberations, and the entire verdict.' [Citation.] We will affirm 'unless a review of the entire record affirmatively demonstrates a reasonable probability that the jury in fact found the defendant guilty solely on the unsupported theory.' " (*Ibid*.)

The prosecution's theory of the case was that Daniels and Williamson aided and abetted each other in the commission of two different target offenses. Although it only needed to prove appellants committed a single felony while acting in concert, with one person promoting or encouraging the other's behavior, the prosecution repeatedly emphasized its theory of mutual aiding and abetting. Williamson's trial counsel likewise implied that each defendant's liability for the substantive gang offense depended on whether they had aided and abetted their co-defendant's target crime: "For Tevin Williamson, the felony they'd have to prove is the felony evading. Okay? And aiding and abetting Daniels in his [violation of Vehicle Code section] 2800.2…. For Daniels, the felony on the active participation has to be possession of a firearm. And I will let [Daniels's attorney] deal with that."

As discussed, there is sufficient evidence of Williamson aiding and abetting Daniels's commission of the evading offense. Daniels's conduct as the direct perpetrator, combined with Williamson's aiding and abetting, subjected both of them to liability for gang participation under section 186.22(a). Given the unlikelihood of the jury's verdict not accounting for Williamson's role as an aider and abettor to Daniels's vehicular evasion, any error in presenting the alternative theory of Daniels aiding and abetting

20.

Williamson's firearm possession was harmless. (*People v. Harris* (1994) 9 Cal.4th 407, 436 ["[W]hen a *factually* erroneous theory of conviction is presented to the jury—i.e., when the theory, though consistent with the law, is not supported by the evidence— reversal is *not* required unless, on the record made at trial, the reviewing court determines that the conviction actually, and solely, rests on the factually erroneous theory."].)

**Confrontation Rights**

Williamson alleges a violation of his Sixth Amendment rights under *Crawford v. Washington* (2004) 541 U.S. 36 (*Crawford*) based on testimony by the prosecution's gang expert about eight prior shootings that were purportedly connected to a rivalry between the Country Boy Crips and East Side Crips. Williamson further contends that admission of the challenged testimony resulted in a denial of his right to a fair trial. We reject both claims.

Background

The prosecution's expert, Officer McCauley, was assigned to the Bakersfield Police Department's Gang Unit in July 2012. His knowledge and expertise regarding local criminal street gangs was largely derived from spending "between 40 and sometimes 80 hours a week contacting gang members, investigating gang-related crimes and reading reports about [those] crimes, speaking with officers from the Gang Unit, [and] speaking with detectives regarding their [gang-related] investigations." Officer McCauley's testimony about the eight shooting incidents between December 2012 and March 2013 was based on a combination of his personal knowledge and information he had obtained from police reports and by speaking with fellow officers. He personally investigated four of the eight shootings. He was not directly involved in the investigation of two of the incidents, and the record is silent as to his level of involvement in the other two cases.

For each of the eight shootings, Officer McCauley provided a brief summary of when and where the incident took place, and the identity of the victims. His testimony

21.

indicated whether the location of the shooting was in Country Boy Crips or East Side Crips territory and whether the victims were members or known associates of either gang. Williamson's claim on appeal is based on the fact that some of this information came from police reports and the verbal statements of non-testifying officers.

Analysis

"The confrontation clause of the Sixth Amendment to the federal Constitution, made applicable to the states through the Fourteenth Amendment, provides that '[i]n all criminal prosecutions, the accused shall enjoy the right … to be confronted with the witnesses against him.'  The right of confrontation includes the right of cross-examination." (*People v. Fletcher* (1996) 13 Cal.4th 451, 455.)  In *Crawford*, the United States Supreme Court held that the confrontation clause bars the admission of out-of-court testimonial hearsay statements except when "the declarant is unavailable …" and the defendant "had a prior opportunity to cross-examine" the declarant.  (*Crawford*, *supra*, 541 U.S. at p. 59.)

"Hearsay is an out-of-court statement that is offered for the truth of the matter asserted, and is generally inadmissible." (*People v. McCurdy* (2014) 59 Cal.4th 1063, 1108.)  Williamson's claim involves a long-debated issue concerning the admissibility of hearsay as part of an expert witness's basis testimony, i.e., the " 'on-the-record recitation of sources relied on for an expert opinion.' " (*People v. Sanchez* (June 30, 2016, S216681) ___ Cal.4th ___, ___ [2016 Cal. LEXIS 4577, *29] (*Sanchez*).)  Until very recently, California courts were bound to adhere to the legal fiction that such evidence is not offered for its truth, but only to reveal the basis for the expert's opinions.  (*People v. Valadez* (2013) 220 Cal.App.4th 16, 30 (*Valadez*); see *People v. Miller* (2014) 231 Cal.App.4th 1301, 1310 ["trial courts have long instructed juries that out-of-court statements related by experts as basis evidence may not be considered for the truth of the matter stated but only for the purpose of evaluating the expert's opinion"].)  In *Sanchez*, *supra*, our state Supreme Court recognized that juries must necessarily consider expert

basis testimony for its truth in order to evaluate the expert's opinion, "and confrontation problems cannot be avoided by giving a limiting instruction that such testimony should not be considered for its truth." (___ Cal.4th at p.___ [2016 Cal. LEXIS 4577, at *32.)

The *Sanchez* opinion attempts to clarify the permissible scope of basis testimony by a gang expert in a criminal case: "When any expert relates to the jury case-specific out-of-court statements, and treats the content of those statements as true and accurate to support the expert's opinion, the statements are hearsay.... If the case is one in which a prosecution expert seeks to relate *testimonial* hearsay, there is a confrontation clause violation unless (1) there is a showing of unavailability and (2) the defendant had a prior opportunity for cross-examination, or forfeited that right by wrongdoing." (*Sanchez*, *supra*, ___ Cal.4th at p.___ [2016 Cal. LEXIS 4577, at *32], fn. omitted.) Trial judges must now consider whether an expert's basis testimony includes "case-specific facts," meaning "those relating to the particular events and participants alleged to have been involved in the case being tried." (*Id.* at p. ___ [p. *14.].) If the answer is yes, the next question is whether such facts are presented in the form of testimonial hearsay. (*Id.* at pp. ___ [pp. *32-33, 38.].) "Testimonial statements are those made primarily to memorialize facts relating to past criminal activity, which could be used like trial testimony." (*Id.* at p. ___ [p. *43.].) An expert's summary of information contained in a police report will generally be considered testimonial hearsay because police reports "relate hearsay information gathered during an official investigation of a completed crime." (*Id.* at p. ___ [p. *55.].)

Assuming without deciding that Officer McCauley's testimony about the shooting incidents included "case-specific facts," Williamson's arguments are flawed in their failure to account for the witness's independent knowledge of at least half of those shootings based on his involvement as an investigating officer. There are no confrontation problems under *Crawford* when a witness has personal knowledge of the facts to which he testifies because such testimony is not hearsay. (Evid. Code, § 1200,

23.

subd. (a); see *Sanchez*, *supra*, ___ Cal.4th at p.___ [2016 Cal. LEXIS 4577, at *30] [testimony based on the expert's own knowledge and investigation is admissible as personal knowledge].) Williamson has at best shown that the expert relied on hearsay as the basis for his knowledge of two of the eight shooting incidents. Under these circumstances, any alleged violation of appellants' confrontation rights amounted to harmless error.

"Confrontation clause violations are subject to federal harmless-error analysis under *Chapman v. California* (1967) 386 U.S. 18, 24. [Citation.] 'Since *Chapman*, we have repeatedly reaffirmed the principle that an otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt.' [Citation.] The harmless error inquiry asks: 'Is it clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error?' " (*People v. Geier* (2007) 41 Cal.4th 555, 608.)

The purpose of Officer McCauley's testimony was to establish an ongoing pattern of gun-related gang violence in the months and weeks leading up to the events at issue. Assuming eight such incidents are compelling of the conclusion that two gangs were engaged in a "shooting war," Williamson fails to show how the impact of the expert's testimony would have been materially diminished had he been limited to identifying the four, five, or six crimes of which he had personal knowledge. Either way, it does not appear the evidence was particularly well received by the jury, since it could not reach a consensus on the gang enhancement allegations against either defendant.

We note further that none of the testimony regarding suspected gang-related shootings was accusatory as to Daniels or Williamson. Officer McCauley repeatedly acknowledged on cross-examination that police were unable to develop any suspects due to a lack of leads and witness cooperation. The background information about the shootings gave further context to appellants' presence in a rival gang's territory and was

24.

probative of the gang *enhancement* allegations, but was otherwise of tangential relevance and entirely nonessential to the charges for which appellants were convicted, including the substantive gang offense.  (*Rodriguez, supra*, 55 Cal.4th at p. 1135 ["section 186.22(a) does not require that the underlying felony be gang related."].)  For all of the reasons discussed, the *Crawford* claim fails.

Separate from Williamson's confrontation arguments is the contention that allowing Officer McCauley to testify about the prior shootings deprived Williamson of the right to a fair trial.  The issue is one of due process, and Williamson must satisfy a high burden to prevail on such a claim.  (*People v. Albarran* (2007) 149 Cal.App.4th 214, 229.)  "The admission of evidence results in a due process violation only if it makes the trial fundamentally unfair.  [Citation.]  'Only if there are *no* permissible inferences the jury may draw from the evidence can its admission violate due process.  Even then, the evidence must "be of such quality as necessarily prevents a fair trial."  [Citation.]  Only under such circumstances can it be inferred that the jury must have used the evidence for an improper purpose.' "  (*People v. Hunt* (2011) 196 Cal.App.4th 811, 817.)

Evidence of recurring gun violence between the Country Boy Crips and the East Side Crips was germane to the prosecution's gang enhancement allegations.  Section 186.22, subdivision (b) "provides different levels of enhancement for the base felony if that felony is 'committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members … .' "  (*People v. Le* (2015) 61 Cal.4th 416, 422-423.)  For Williamson, the enhancement was attached to the charge of unlawful possession of a firearm by a convicted felon.

"Gang evidence is relevant and admissible when the very reason for the underlying crime, that is the motive, is gang related.  [Citation.]  ' "[B]ecause a motive is ordinarily the incentive for criminal behavior, its probative value generally exceeds its prejudicial effect, and wide latitude is permitted in admitting evidence of its

existence.” ’ ” (*People v. Samaniego* (2009) 172 Cal.App.4th 1148, 1167-1168; see *People v. Valdez* (2012) 55 Cal.4th 82, 130-131 [gang rivalry motive].)  Evidence of Williamson's presence in rival gang territory combined with background information about the alleged "shooting war" allowed the jury to draw permissible inferences relevant to the gang enhancement allegations.  We are not convinced the jury used Officer McCauley's testimony for an improper purpose, especially in light of the mistrial on the gang enhancements, and thus reject Williamson's claim that the trial proceedings were fundamentally unfair.

**Alleged Prosecutorial Misconduct**

Daniels alleges two instances of prosecutorial misconduct.  One claim pertains to an exchange that occurred while he was being cross-examined, and the other involves a comment made by the prosecutor during closing argument.  We disagree with appellant's characterizations of the challenged behavior.

Allegations of prosecutorial misconduct are analyzed under federal and state law standards.  "A prosecutor's misconduct violates the Fourteenth Amendment to the federal Constitution when it 'infects the trial with such unfairness as to make the conviction a denial of due process.'  [Citations.]  In other words, the misconduct must be 'of sufficient significance to result in the denial of the defendant's right to a fair trial.'  [Citation.]  A prosecutor's misconduct 'that does not render a criminal trial fundamentally unfair' violates California law 'only if it involves " 'the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury.' " ’ ” (*People v. Harrison* (2005) 35 Cal.4th 208, 242.)

As previously mentioned, Daniels testified in his own defense.  During cross-examination, the prosecutor asked him questions regarding his knowledge of the eight shootings that occurred from December 2012 through March 2013 and his familiarity with the victims of those incidents.  This line of questioning tested the veracity of Daniels's testimony that he dropped out of the Country Boy Crips in approximately

August 2012 and had completely abandoned the gang lifestyle. At one point, Daniels was asked if he participated in the eighth shooting, i.e., the one on March 2, 2013, and he replied "No, sir." The prosecutor then attempted to ask where Daniels was on the date of the sixth shooting, February 23, 2013, but was stopped when the trial court sustained an unspecified objection by defense counsel. Following a sidebar discussion, the prosecutor moved on to other areas of inquiry.

Daniels claims the prosecutor committed prejudicial misconduct by implying he was responsible for one of more of the shootings referenced in Officer McCauley's earlier testimony. Daniels avoids discussing the implications of his trial counsel having previously asked Officer McCauley if he was involved in any of the shootings or if the police considered him to be a suspect in those cases. It could be argued that such questioning opened the door to the issue, which had not previously been raised or suggested by the prosecution. (C.f., *People v. Friend* (2009) 47 Cal.4th 1, 35 [where defendant opened the door to certain evidence on direct examination, there was no prosecutorial misconduct when that same evidence was elicited on cross-examination].) Regardless, the complained-of exchange between Daniels and the prosecutor was an isolated incident during a nearly three-week trial. At no other time did the prosecution argue or insinuate that either appellant was involved in the prior shootings. The propriety of the challenged question is debatable, but asking it was not so egregious as to constitute prejudicial misconduct under either the state or federal standard.

The second claim of prosecutorial misconduct relates to the following statements made during closing argument: "The officers acted legally to detain and arrest Mr. Williamson and the officers did not use excessive force. I've said it for Mr. Daniels; I will repeat it for Mr. Williamson. They were medically cleared that same night. And at some point, folks, people got to start taking responsibility for what they did." Failing to acknowledge the context in which the last comment was made, Daniels accuses the prosecutor of "asking the jury to infer that [he and Williamson] were guilty based upon

27.

their reliance upon and exercise of their constitutional right to trial." In reality, the prosecutor was asking jurors to reject the defendants' express and implied arguments that police officers gave false testimony to avoid liability for using excessive force in making their arrests. Use of the phrase "taking responsibility" was in reference to appellants resisting arrest and then complaining about the physical consequences of their actions.

"When attacking the prosecutor's remarks to the jury, the defendant must show that, '[i]n the context of the whole argument and the instructions' [citation], there was 'a reasonable likelihood the jury understood or applied the complained-of comments in an improper or erroneous manner. [Citations.] In conducting this inquiry, we "do not lightly infer" that the jury drew the most damaging rather than the least damaging meaning from the prosecutor's statements.' " (*People v. Centeno* (2014) 60 Cal.4th 659, 667 (*Centeno*).) "If the challenged comments, viewed in context, 'would have been taken by a juror to state or imply nothing harmful, [then] they obviously cannot be deemed objectionable.' " (*People v. Cortez* (2016) 63 Cal.4th 101, 130.) We perceive no likelihood that the jury interpreted the prosecutor's statement in the manner alleged by Daniels. Thus, there are no grounds for reversal based on prosecutorial misconduct.

**Alleged Ineffective Assistance of Counsel**

Daniels presents two claims of constitutionally deficient performance by his trial attorney. The first claim, which is imbedded within his sufficiency of the evidence arguments, faults defense counsel for not making an adequate record of an objection to a response given by the prosecution's gang expert. The second claim pertains to the granting of Daniels's motion to bifurcate the trial on the prior conviction allegations.

To establish a claim of ineffective assistance of counsel, an appellant must show "(1) counsel's performance was deficient because it fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's deficiencies resulted in prejudice." (*Centeno, supra,* 60 Cal.4th at p. 674.) The test for prejudice is whether there is "a reasonable probability that, but for counsel's unprofessional errors,

the result of the proceeding would have been different." (*Strickland v. Washington* (1984) 466 U.S. 668, 694 (*Strickland*).) For the reasons that follow, we conclude Daniels's arguments fall short of establishing prejudice. (See *id*. at p. 697 ["If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice … that course should be followed."].)

Regarding the evidentiary issue, the prosecution asked Officer McCauley: "Are you aware of any custom and practice amongst gang members as far as transporting a gun in a car?" The expert replied, "Yes, sir. I've spoken with several gang members, and many times gang members have told me that when they're in a car with a gun, they know who has the gun, they know if there's a gun in the car, and they –" Daniels's attorney interrupted with a request for a sidebar conference, which was granted. An objection was apparently made during the unreported discussion, as evidenced by the trial court saying "the objection is overruled" when it went back on the record. The prosecutor transitioned to other topics and never followed up on his original question. On appeal, Daniels complains of his attorney's failure to memorialize a hearsay objection on grounds that the testimony violated his confrontation rights under *Crawford*, *supra*.

There was no basis for a *Crawford* objection because the expert's response did not contain "case-specific facts" nor did it constitute testimonial hearsay. (*Sanchez, supra*, ___ Cal.4th at pp. ___ [2016 Cal. LEXIS 4577, at *14, 34-35, 43]; *Valadez, supra,* 220 Cal.App.4th at pp. 35-36 [general background information obtained through conversations with gang members is not testimonial under *Crawford*].) Officer McCauley at worst relayed hearsay in a manner prohibited by the Evidence Code, which would have been subject to review under the standard articulated in *People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*). (*People v. Duarte* (2000) 24 Cal.4th 603, 618-619 [*Watson* standard applies to the erroneous admission of hearsay evidence]). We have already rejected Daniels's claims of being prejudiced by the prosecution's argument that he aided and abetted Williamson's firearm possession. For all of the same reasons, we

29.

conclude it is not reasonably probable he would have obtained a more favorable outcome but for his attorney's failure to make an explicit hearsay objection on the record.

We now turn to the remaining claim. Daniels and Williamson both moved in limine for bifurcation of the prior felony conviction allegations. Daniels's moving papers asked for "a bifurcated jury trial on the issue of guilt and the validity of the alleged prior convictions." When the motions were heard, the trial court asked appellants if they were willing to waive their right to a jury and submit to a bench trial on the subject enhancements. Appellants agreed to the proposal, with Daniels's attorney stating, "We'll waive the jury." The trial court ruled on the motion shortly thereafter: "With respect to the motion to bifurcate the priors, I do see a basis for possible prejudice, and also given the fact that the People are not objecting, I will grant the motion to bifurcate the priors, contingent upon the agreement of both defendants to waive a jury on the issue and submit the issue of those allegations and enhancements to the Court in this proceeding."

Fixating on the trial court's use of the word "contingent," Daniels alleges that he was compelled to sacrifice his constitutional right to a jury trial in order to obtain the requested bifurcation. He alleges deficient performance based on his trial counsel's failure to "object to the trial court's improper condition." With respect to prejudice, Daniels is careful to couch his arguments in terms of obtaining a different "result" at the motion hearing. He contends prejudice is established by the probability that, but for the allegedly ineffective assistance, the trial court "would have granted the defense motion to bifurcate without requiring appellant to waive his right to jury trial on the enhancements."

Although the *Strickland* opinion discusses prejudice in terms of whether "the result of the proceeding would have been different," (466 U.S. at p. 694), it also makes clear that an appellant must demonstrate a reasonable probability of a "more favorable" result (*id*. at p. 695). Daniels's implied arguments to the contrary have no merit. (See, e.g., *People v. Fairbank* (1997) 16 Cal.4th 1223, 1241 ["Prejudice requires 'a reasonable probability that a more favorable outcome would have resulted . . .' "].) It makes no

30.

difference that the enhancement allegations might otherwise have been tried to a jury if the outcome would have been the same as it was in the bench trial.

"[A] prior conviction trial is simple and straightforward as compared to the guilt phase of a criminal trial. Often it involves only the presentation of a certified copy of the prior conviction along with the defendant's photograph and fingerprints. In many cases, defendants offer no evidence at all, and the outcome is relatively predictable." (*People v. Monge* (1997) 16 Cal.4th 826, 838.) Such was the case here. Daniels's ineffective assistance of counsel claim fails due to his inability to demonstrate any possibility that the prior conviction allegations would not have been found true had those issues been decided by a jury rather than by the trial court.

**Cumulative Error**

Daniels argues the cumulative effect of the errors alleged in his prosecutorial misconduct and ineffective assistance of counsel claims require reversal of the judgment. Case law instructs that "a series of trial errors, though independently harmless, may in some circumstances rise by accretion to the level of reversible and prejudicial error." (*People v. Hill* (1998) 17 Cal.4th 800, 844.) After considering Daniels's arguments on a cumulative basis, we conclude the alleged errors did not collectively result in prejudice.

**Sentencing**

Daniels assigns error to the trial court's imposition of a concurrent sentence for his evading conviction under count 1, alleging the sentence should be stayed pursuant to section 654 in relation to the active gang participation conviction under count 4. Williamson, as he has done with all of Daniels's claims, summarily joins in the argument as it applies to his concurrent sentence on count 2 for possession of a firearm by a convicted felon. Respondent concedes the issue, agreeing with Daniels that the controlling authority is *People v. Mesa* (2012) 54 Cal.4th 191 (*Mesa*). In *Mesa*, the California Supreme Court held that section 654 does not permit separate punishment for a violation of section 186.22(a) when the only evidence of active gang participation is the

commission of other currently charged offenses for which the defendant has been convicted. (*Mesa*, at pp. 199-200.) We accept respondent's concession and order the judgments modified to comply with section 654.

## **DISPOSITION**

The judgment against Deshawn Daniels is modified to stay the sentence imposed for his conviction of felony evading under count 1. The judgment against Tevin Williamson is modified to stay the sentence imposed for his conviction of being a felon in possession of a firearm under count 2. As so modified, and in all other respects, the judgments are affirmed. The trial court is directed to prepare amended abstracts of judgment reflecting the specified modifications and forward them to the Department of Corrections and Rehabilitation.

_____
GOMES, J.

WE CONCUR:


_____
HILL, P.J.


_____
LEVY, J.

32.